# McGinnis, Appellant, v. Kerr.

*Negligence—Elevators—Evidence—Nonsuit.*

In an action to recover damages for the death of plaintiff's son against the latter's employer, it appeared that the defendants were contractors for carpenter work in remodeling the interior of a building. Plaintiff was one of their employees. There was an elevator in the building which was operated by the person using it, and was used by the various workmen in the building. The defendants did not own the building, nor had they anything to do with the construction or use of the elevator. Three men working in the building, but not employees of defendants, after starting the elevator found that it stopped, and looking up the shaft saw deceased's head pinned under the balance weight on an upper floor. This was all that was known of the accident. *Held*, that a nonsuit was properly entered.

Argued Nov. 5, 1902. Appeal, No. 146, Oct. T, 1902, by plaintiffs, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1901, No. 178, refusing to take off nonsuit in case of J. M. McGinnis and Sarah L. McGinnis v. William Kerr, trading as William Kerr's Sons. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's son. Before EVANS, J.

In an opinion refusing to take off nonsuit EVANS, J., stated the facts to be as follows :

The plaintiffs were father and mother of Alfred McGinnis, a young man twenty-two years of age and unmarried, who was killed in the Verner building on Penn avenue, city of Pittsburg, on October 8, 1900, and, as the plaintiffs claim, through the negligence of the defendants.

The defendants are contractors, and at the time of the accident had a contract for doing the carpenter work in remodeling the interior of the Verner building. Alfred McGinnis was in their employ. They had been working in the building but a short time, about ten days or two weeks. On the day of the accident, at 12 o'clock noon, three employees of another contractor in the same building went to a freight elevator in the building for the purpose of riding from the fifth to the eighth

floor, which was the top floor of the building. This elevator was inclosed at the rear by the wall of the building. In front was a wire gate about four feet and a half high, which was raised and lowered. The sides of the elevator were open except that across each side were either two or three iron bars (the witnesses differ as to the number), the top one about four feet from the floor. The elevator was operated by the person using it, by means of a rope which was located about eighteen inches back from the side of the elevator to the left of the person facing it.

On the same side of the elevator as the rope and about two inches from it the balance weight of the elevator passed up and down between two upright posts about eighteen inches apart. The weight was supported by a rope which hung about midway between the two uprights. So when nothing was seen between the two upright posts the weight was above, and when the rope was there the weight was below. One of three men above mentioned when he went to the elevator raised the gate in front and looked down to see where the elevator was and if any person was using it. The elevator was at the bottom, and he told one of his companions to start the elevator up which was done. It went about one floor when it stopped suddenly, and looking up the men operating it saw the head of a man on the seventh floor pinned down by the balance weight across his neck. He reversed the elevator and when released, the man above pitched forward into the shaft and was killed. The person killed was Alfred McGinnis.

That is all there is known of the accident. How McGinnis came to have his head between the guides of the balance weight is not known, and can only be inferred from the surrounding circumstances.

The defendants had nothing to do with the construction, maintenance or operation of the elevator. The elevator was in the building when defendants commenced work, and in the same condition as when the accident occurred.

There was a stairway near the elevator leading from the first floor to the top. The plaintiff offered evidence that the workmen in the building, among them the employees of the defendants, used the elevator for the purpose of going from one floor to another, and that usually the elevator was operated from the side.

There was evidence offered that the elevator as constructed was dangerous, in that the weight was too near the operating rope and was liable to injure the hand or the arm of the person operating the elevator; but that was not the nature of the accident which injured this man, for there was no evidence to show that the operator needed to put his head between the posts enclosing the weights in order to operate the elevator.

*Error assigned* was refusal to take off nonsuit.

*James S. Campbell* and *J. W. Lee*, with them *Eugene Mackey*, for appellants.

*William M. Hall, Jr.*, with him *W. B. Adair*, for appellee, filed no printed brief.

OPINION BY MR. JUSTICE MITCHELL, January 5, 1903:

There was no evidence of negligence on the part of the defendants. They were not the owners of the building or the elevator, nor was the latter one of the tools for defendants' employees to use, or a place for them to work in. The latter used the stairs or the elevator in going from floor to floor at their own volition, apparently as defendants themselves and everybody else about the building did. If there was danger in the use of the elevator it was as open to the notice of the deceased as to defendants, and he being of full age and a mechanic in a trade requiring intelligence was in no need of instruction as to obvious risks.

But beyond this there was no evidence to show how or why the deceased got into the position of danger. Three men working on the building, but not employees of defendants, after starting the elevator found that it stopped, and looking up the shaft saw deceased's head pinned under the balance weight on an upper floor. That is all that is known of the accident. Why the deceased put his head in the place of danger can only be conjectured, and so far as the accident itself speaks it points to deceased's own negligence.

Judgment affirmed.