BENNETT v. BUCKEYE COTTON OIL COMPANY.

Opinion delivered February 11, 1918.

MASTER AND SERVANT—NEGLIGENCE—QUESTION FOR JURY.—In an action by an employee of a cotton seed oil mill for damages resulting from a personal injury, caused by defendant's negligence, held, under the evidence that the trial court improperly withdrew the case from the jury and directed a verdict for the appellee.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

*Geo. W. Hays* and *Ben D. Brickhouse,* for appellant.

1. There was evidence establishing negligence and the case should have been submitted to the jury. 124 Ark. 386; 100 *Id.* 53; 97 *Id.* 347; 89 *Id.* 522; 87 *Id.* 498; 61 *Id.* 555; 95 *Id.* 294.

2. The failure of appellee to discharge its duty with reference to appliances, was negligence. 3 Labatt M. & S., § 917, pp. 2462-5; 124 Ark. 387; 105 *Id.* 392; 90 *Id.* 223.

3. An ordinary inspection would have disclosed the loose board. 123 Ark. 122. There were two ways of doing the work. Appellant chose the most dangerous, perhaps, but still it was a question for the jury, as his choice was not negligence *per se* on his part. 98 Ark. 554; *Ib.* 202; 113 *Id.* 45; 122 *Id.* 227.

*Cockrill & Armistead,* for appellee.

1. There was no evidence of negligence. Appellant was experienced and no defect in the apparatus is shown. 79 Ark. 437; Labatt, M. & S., § § 1064, 2819; 171 S. W. 876; 90 Ark. 210. A verdict was properly directed.

McCULLOCH, C. J. Appellant instituted this action against appellee to recover damages on account of personal injuries received while working in the latter's service. On the trial of the cause before a jury the court gave a peremptory instruction in favor of appellee, and the only question presented on this appeal is whether or not there was sufficient evidence to warrant a submission of the issues to the jury.

Appellee operates a cotton oil mill near the city of Little Rock, and in connection therewith also operates a plant for producing animal food stuffs by mixing cotton seed hulls with other products. Appellant was working in its employ at this plant and was engaged in oiling the bearings of a spiral conveyor used to convey the hulls from freight cars to the plant. The spiral conveyor rod was enclosed in a wooden box 16 inches square, outside

measurement, and there was a hopper at the end of the conveyor next to the car door into which the hulls were thrown from the car. The men engaged in unloading the cars forked the hulls into the hopper where they were taken by the conveyor and carried through the box into the hull-house, a distance of something over 50 feet. The conveyor rod was supported by metal hangers about 10 feet apart, and the hanger at the end of the conveyor was between the hopper and the car door. The conveyor was five feet eight inches above the ground and was supported by wooden props or legs. Appellant's method of operating his work was to climb upon the conveyor box at the end next to the hull-house and walk along the box oiling the bearings as he went along. He carried a small wire in his hand with which he cleaned out the lint and hulls from the oiling holes. He was endeavoring to step over the hopper to reach the oil hole at the last hanger when he fell into the hopper and his foot was crushed.

His contention is that as he made the step over the hopper a piece of plank constituting a part of the cover of the conveyor box was loose and turned under his foot and caused him to step into the hopper. The contention of appellee is, as shown by the testimony of the witnesses which were introduced, that appellant took hold of the sides of the hopper and was attempting to swing himself over it when he stepped into the hopper. It is also the contention of appellee that appellant was not doing his work in the proper manner, in that he should have walked along by the side of the conveyor box where he could reach the oiling holes from the ground, and that when he came to the last hanger he should have reached it by stepping upon a ladder which was constructed as a part of the framework of the hopper, and that it was unnecessary for him to get on top of the conveyor box or to attempt to step over the hopper. Appellee introduced witnesses in support of this theory and also exhibited photographs purporting to show the structure as it existed at the time the injury occurred. Those photographs show the lad-

der in place on the side of the hopper as contended by appellee. There was also testimony to the effect that appellant was expressly forbidden to get on top of the conveyor box and that notices posted about the premises gave warning not to do so. On the other hand appellant testified that there were no notices posted about the premises warning against getting upon the conveyor box and that he had always performed his work of oiling the conveyor bearings by walking along the top of the box and that this was done under the supervision and frequently in the presence of the foreman who observed him doing the work. Appellant had been working for the company about eight months, and this conveyor had been in operation there for three months up to the time of the injury. Appellant denied that he undertook to swing himself across the top of the hopper, but stated that it was necessary in order to reach the last hanger for him to step over the hopper, and that the loose plank on top of the conveyor box next to the hopper turned under his foot and caused him to step into the hopper. He also denied that there was any ladder there at the time of his injury and stated positively that the photographs were incorrect in showing the presence of a ladder. There was, therefore, a sharp conflict in the testimony as to the manner in which appellant received his injuries, and in testing the correctness of the court's ruling in giving a peremptory instruction we must accept the testimony in the light most favorable to appellant's contention. In other words, we must assume that the jury would have accepted appellant's version of the matter, and if it was sufficient to support a verdict in his favor, the cause should have been submitted to the jury. Appellant's testimony is positive to the effect that his injury was caused by a defect in the covering of the conveyor box in that there was a loose plank next to the hopper and that this plank turned under his foot and precipitated him into the hopper which brought his foot in contact with the spiral conveyor. If there was a loose plank there, as contended by appellant, it constituted a defect in the

covering of the conveyor box, and the jury might have found that it constituted negligence on the part of appellee in failing to discover that defect and repair it. The box was comparatively new and generally in good condition, the fact that the plank which turned under appellant's foot was loose at the time, if the jury found that to be true, was sufficient to show that the defect was one which might have been discovered upon a reasonably diligent inspection. In other words, if that particular plank had not been nailed down at all, as is indicated by the testimony adduced by appellant, then the jury might have found it to have been a discoverable defect and that it constituted negligence on the part of the employer to fail to discover the defect and repair it. *St. L., I. M. & S. Ry. Co.* v. *Andrews,* 79 Ark. 437; *St. L., I. M. & S. Ry. Co.* v. *Webster,* 99 Ark. 265; *St. L., I. M. & S. Ry. Co.* v. *Ingram,* 124 Ark. 298.

If, as contended by appellant, he was doing the work in the method he had usually performed it, with the approval of his foreman, then appellee owed him the duty to exercise ordinary care to make the place reasonably safe.

These are questions which under the testimony should have been submitted to the jury, and it was also within the province of the jury to determine whether or not appellant was guilty of negligence in attempting to pass over the hopper to get to the last hanger. He testified that he could not reach the hanger any other way, as there was no ladder there, and that barriers placed on the side of the hopper extending into the door of the car prevented him from reaching the oil hole at this hanger from the ground.

We are of the opinion, therefore, that the trial court erred in taking the case from the jury.

Reversed and remanded for a new trial.