# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

ARKANSAS NATURAL GAS COMPANY *v.* SEALY.

Opinion delivered December 8, 1924.

1. EVIDENCE—JUDICIAL NOTICE—INFLAMMABILITY OF NATURAL GAS.— The courts will take judicial notice of the fact that natural gas is so inflammable that it will ignite with instant explosion immediately upon the application of flames to it.

2. MASTER AND SERVANT—DUTY OF MASTER TO PROMULGATE RULES.— Generally, where a master is engaged in a dangerous business, he must adopt and promulgate such rules for the conduct of his business and the government of his servants in the discharge of their duties as will afford reasonable protection to them, and he must adopt measures reasonably necessary to enforce observance of such rules.

3. MASTER AND SERVANT—NEGLIGENCE—EVIDENCE.—Evidence *held* sufficient to support finding that an employee's negligence in striking a match, in violation of rules, caused an explosion of gas which burned plaintiff.

4. MASTER AND SERVANT—LIABILITY FOR FELLOW-SERVANT'S NEGLI-GENCE.—Under a statute making a master responsible for injury to a servant caused by a fellow-servant's negligence, the negligent act of a fellow-servant in striking a match where gas was escaping, causing injury to plaintiff, was attributable to the master.

Appeal from Hot Spring Circuit Court; *Thomas E. Toler,* Judge; affirmed.

### STATEMENT OF FACTS.

A. W. Sealy sued the Arkansas Natural Gas Company to recover damages for personal injuries alleged to have been received by him while in the employment of the gas company.

The accident happened in March, 1923, and A. W. Sealy at that time was nearly twenty-five years of age. The Arkansas Natural Gas Company has a pipe-line extending through Hot Spring County, Arkansas, and Sealy had been working for the company nearly a month when he was injured. John E. Barber was foreman of the gang, and was present when Sealy was burned. They were putting a six-inch flange together, connecting two six-inch lines from the well to the separator. There were six or seven men in the gang, and they were all present. Four were working on the connection, two of whom were tightening and two holding the bolts. The connection was being made in the usual and customary way, and the crew was using the usual tools and fittings. The line was about two feet off of the ground. Gas was escaping from the connection, and it was getting late. The hazards and dangers of oil and gas field work are much greater than usually attend other work. The company had posted a rule prohibiting smoking, and the foreman had always instructed his crew not to strike matches while they were at work. Some of the men say that the foreman started to hold the nuts and then told Sealy to hold them. He was holding the nuts for the other workmen at the time he was injured. One of the men, named Knight, who was not doing anything at this particular time, struck a match on his pants, with which to light a cigarette, and this caused the explosion which burned Sealy. Knight was standing between five and ten feet away at the time he struck the match. All of the men knew that the gas was escaping, and stated that Knight violated the rules of the company when he struck the match. Knight had been working, helping to put on the pipe, just before the match was struck, and knew that the gas was escaping. He stepped back just after he had quit work on the pipe line.

C. M. Knight was a witness for the defendant. He denied striking the match that ignited the gas, and said that he was carrying a pair of tongs to the wagon when the fire started. He admitted, on cross-examination, that

he smoked cigarettes, and usually smoked eight or ten per day. He stated that he had been working on the connection where the gas was escaping, and knew that the gas was escaping. He stated further that the foreman had always warned them not to strike matches when they were engaged in work of that character.

Sealy was burned severely, and was disfigured for life.

The jury returned a verdict for the plaintiff in the sum of $2,250, and, from a judgment rendered against it in favor of the plaintiff, the defendant has duly prosecuted an appeal to this court.

*Mahony, Yocum & Saye,* for appellant.

The proximate cause of the injury was the striking of a match by one of the servants of appellant, and at a time when this servant was not in the course of his employment or acting within the scope of his authority. The doctrine of *res ipsa loquitur* has no application here. It does not make any difference whether gas was escaping at the time, because it was not the fact that gas was escaping that caused the injury, but the striking of the match, without which appellee would not have been injured. 108 Ark. 483; 44 Fed. 857; 94 N. W. 444; 90 Ark. 210; 92 Ark. 138. When the master, conformably with his duty, has made reasonable rules for the protection of his servants, and has made them known to the servants, he is not liable if one servant is injured because of the failure of another servant to obey the rules, unless the rules have been abrogated. It is shown by the weight of the evidence that Knight had finished his work for the day, and was standing by, looking at the others work. His striking the match was for purely a personal reason, and not in the course of his employment or within the scope of his authority as an employee. 115 Ark. 288, 296; 115 Ky. 447; 103 Am. St. Rep. 330; 93 Ark. 402; 2 Cooley on Torts, 1032; Wood on Master & Servant, 562; 66 L. R. A. 592; 96 S. W. 1073-74; 152 Ark. 258.

*D. D. Glover,* for appellee.

The evidence shows that the rule relied on here was for the protection of the company's employees and for the protection of the foreman, as appears by his own testimony, and the evidence also shows that it was abrogated. Having learned that Knight was a smoker, it was negligence not to discharge him. *Pekin Stave Co.* v. *Ramey,* 108 Ark. 483, relied on by appellant, is not opposed to appellee's contention, since the evidence here shows that the master's negligence was the proximate cause of the injury. It is not sufficient to relieve the master from liability that he make a rule. He must see to it that it is obeyed. 58 Ark. 324, 332; 54 Ark. 299; 100 Ark. 442; 77 Ark. 405; 84 Ark. 376. If a rule is made, it must be one which is proper and sufficient under the circumstances, for due diligence is not satisfied by an insufficient and inadequate rule. 1 Bailey, Master and Servant, 798. The reasonableness of rules made for the protection of the master's interests is quite different from the sufficiency of rules made to protect the servant. *Id.* 811. The question whether the risk was assumed by the servant in this case was one for the jury, and the verdict settles that issue in appellee's favor. 88 Ark. 548; 95 Ark. 291; 97 Ark. 486; 90 Ark. 223.

HART, J., (after stating the facts). The sole ground upon which the judgment is sought to be reversed is that the evidence is not legally sufficient to warrant the verdict.

The evidence for the defendant, as well as for the plaintiff, shows that it is very dangerous to work in oil and gas fields. Indeed, it is a scientific fact of which the court will take judicial notice, that natural gas is so inflammable that, the moment a flame is applied to it, it will immediately ignite with an instant explosion. *Holmberg* v. *Jacobs* (Ore.), Ann. Cas. 1917D, p. 496; *Jamieson* v. *Indiana Natural Gas & Oil Co.* (Ind.), 12 L. R. A. 652, and *Whittemore* v. *Baxter Laundry Co.* (Mich.), Ann. Cas. 1916C, p. 818.

The general rule is that, where a master is engaged in a dangerous business, he must adopt and promulgate such rules for the conduct of his business and the government of his servants, in the discharge of their duties, as will afford reasonable protection to them. He must also adopt such measures as may be reasonably necessary to secure the observance of such rules. *Railway Company* v. *Tripplett,* 54 Ark. 289, and *Railway Company* v. *Hammond,* 58 Ark. 324.

In the case before us the master adopted a rule prohibiting the servants from smoking while they were working near the pipe lines where gas was likely to escape, and they were especially instructed by their foreman not to strike a light while working in such places. The men were working under the direct supervision of their foreman. He had a gang of seven men who were working together under his directions. They were engaged in fitting some pipes together which conducted gas from the main pipe line. Some of the men were doing one thing and some another; but all were engaged in the same work.

According to the testimony of the foreman, who was a witness for the defendant, Sealy was in the discharge of his duty at the time he was burned, and the work was being done in the usual and customary way. All of the gang knew that the gas was escaping. He stated further that if a match had been struck by some one standing ten feet away the flame would ignite the gas and the fire would travel like lightning.

Other witnesses testified that Knight smoked cigarettes daily, and that he started the fire which burned Sealy by striking a match with which to light a cigarette.

The foreman further stated that he did not see what ignited the gas, but it must have been a match, and that, if any one struck a match, it was negligently done.

Knight denied striking a match at the time Sealy was injured, but admitted that he carried matches and smoked cigarettes. He knew it was against the rules to strike matches while they were doing the work that they were

doing when Sealy was burned. He was gathering up the tools and was carrying a pair of tongs to the wagon at the time Sealy was burned.

Another witness said that Knight had been working just before he struck the match, and knew that the gas was escaping when he struck it. Knight had been helping to put on the pipe, and then stepped back about ten feet when he struck the match.

It is legally and fairly inferable from this evidence that the lighted match caused the gas to explode and to burn Sealy. The evidence also shows that Knight struck the match, and that he was guilty of negligence in doing so. He was engaged in the same work with Sealy, and his negligence in striking the match caused the explosion which resulted in setting fire to the gas, and burned Sealy before he was aware that the match had been struck or could take any precautions to avoid the injury.

It is claimed by counsel for the defendant that the case comes within the exceptions to the rule as laid down in *Arkansas Natural Gas Co.* v. *Lee,* 115 Ark. 288, and *American Ry. Express Co.* v. *Davis,* 152 Ark. 258. We cannot agree with counsel in this contention. In each of those cases the servant had stepped aside from his employment, and was acting solely on his own account in a matter in which the master had no connection. So it was said that the servant was not acting for the master and was not his representative in the act which caused the injury.

In the case first cited the plaintiff was assaulted by another servant pursuant to a plan to drive him out of the defendant's employment.

In the case last cited the plaintiff was killed by a fellow servant in playing with a pistol intrusted to him by the master. He was not engaged in doing any work for the master at the time, but had stepped aside to play with the pistol, a matter which was in no way connected with his employment.

In the case before us all of the men were working in the same gang. They knew that the gas was escaping

and that it was against the rules to strike a match while engaged in such work. Knight, who struck the match, had just finished his work on the pipe, according to one witness, and was carrying some tools to the wagon, according to his own testimony. It is true that he denied striking the match, but the fact that he did so is established by the testimony of other witnesses. The foreman of the defendant admitted that the striking of the match caused the injury, and that it was negligence to strike it at the time and place in question.

All of the servants were working together at the time Sealy was injured, and it constituted actionable negligence for one of them to violate a rule made for their common protection, the doing of which would likely result in injury to some of them. To illustrate: If several men, engaged in working around a place where gas was escaping or likely to escape, should agree not to strike a light so that they might avoid exploding the gas and injuring each other, all would agree that it was actionable negligence for one of the persons to strike a match and cause an explosion which would burn one of his fellow workers. Now, under our statute, the master is responsible for the negligent act of one servant causing injury to his fellow workers. Therefore, the negligent act of Knight in striking the match which caused the gas to explode and burn Sealy was also attributable to the master.

No other assignment of error is presented for a reversal of the judgment, and it will therefore be affirmed.

CONCURRING OPINION.

McCulloch, C. J.    The evidence seems to be legally sufficient to sustain a finding that the defendant, acting through its foreman, was negligent in failing to enforce the rule intended to afford protection to its employees, and the case is thus brought within the principles announced in *Barrentine* v. *Henry Wrape Co.*, 105 Ark. 485, and cases there cited, hence I concur in the judgment of affirmance on that ground. I do not, however, agree that there is any liability on account of the negligence of

Knight, the other employee, for he was not acting at the time within the scope of his employment, but, on the contrary, his act in striking the match to light a cigarette constituted a stepping aside from his line of duty, and, in the performance of that act, he was not representing his employer. The case in that respect falls within the principle announced in the cases cited in the opinion of the majority.

The statute referred to in the opinion has no reference to the negligent act of a fellow-servant done during a departure from his line of duty. It is true that any negligent act committed by a servant is beyond the scope of his authority and the master is nevertheless responsible, but if the act itself is committed by the servant for his own personal convenience, and is entirely disconnected from the work which he is authorized to do, then the master is not responsible. In the present case the act of Knight in striking the match to light the cigarette was wholly for his own personal taste and convenience, and was entirely disconnected from any duties which Knight was authorized by his employer to perform, and there is therefore no liability on that account.

Mr. Justice WOOD concurs.