ARKANSAS MINING COMPANY *v.* EATON.

Opinion delivered December 6, 1926.

1.  APPEAL AND ERROR—SUFFICIENCY OF EVIDENCE TO SUSTAIN VERDICT.
    —In testing the legal sufficiency of evidence to sustain a verdict, the evidence must be viewed in the light most favorable to plaintiff.

2.  MASTER AND SERVANT—DUTY TO ADOPT RULES.—Where the conduct of a business is complicated or dangerous or where it is obvious that the safety and protection of employees depend upon the adoption and enforcement of proper rules, failure to adopt such rules constitutes negligence.

3.  MASTER AND SERVANT—FAILURE TO ADOPT RULES—BURDEN OF PROOF.—In an action by a servant for personal injuries, the burden of showing the master's negligence in failing to adopt or enforce proper rules rests upon the servant; the presumption being that the master has adopted and enforced all rules necessary to the operation of the business.

4.  MASTER AND SERVANT—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.—In an action for injuries to a servant operating a coal-cutting machine in a mine, caused by the failure of a fellow-servant to give notice of placing a defective coal-car in the entry of the room used by the plaintiff, where no rule requiring notice thereof to be given was shown and no such rule was necessary, it being plaintiff's duty to look out for such cars, evidence *held* insufficient to sustain recovery.

Appeal from Johnson Circuit Court; *J. T. Bullock,* Judge; reversed.

STATEMENT BY THE COURT.

George Eaton sued the Arkansas Mining Company and R. A. Blackwood, trustee, to recover damages for

personal injuries received while working in the mine of the defendants.

George Eaton was a witness for himself. According to his testimony, on the 14th day of August, 1924, he was running a Sullivant coal-cutting machine for the defendants in their coal mine in Johnson County, Arkansas. The machine was operated by electricity, which ran from a cable extending from the main entry of the mine into the room where the machine was operated. The cutting machine weighed several tons, and was carried into the room where it was operated on a truck on the mine tracks. It was moved from one place to another on steel tracks in the mine. After Eaton had worked for an hour and a half and had finished cutting the coal in the room, he and his assistant started to back the machine out of the room. He had a carbide light on his head, and faced the machine in operating it. The cutting machine is twelve feet long and three feet wide. Eaton had to kneel on a platform on the machine in operating it. On backing out, his right side was towards the machine and his face was to the side watching the cable which carried the electricity. His assistant also carried a carbide light, and it was his duty to follow the machine and watch the cable so that the machine would not be dragged over it. Eaton had been operating such a machine for ten or twelve years at the time he was injured. As he was backing the car into the neck or tunnel which extended from the room where he had been cutting coal to one of the main entries of the mine, he backed against a coal-car, and hit it before he noticed the car being there. At once he applied the brake on his machine, and, when he took his hand off the brake, the machine jumped, and this caused his hand to be caught between the cutting machine and the coal-car. His finger was broken and permanently injured by the accident.

At one place in his direct examination Eaton testified that he had not been notified that the coal-car had been set in there. In this connection we quote from his testimony the following:

"Q. State whether or not it is customary to put those cars in an entry that way behind a coal cutting machine. A. It isn't practical, for, whenever they do, they generally notify us."

Again we quote from his testimony the following:

"Q. Hadn't the driver the right, under your mining regulations, to put the car in there without saying a word to you or anybody else? A. Yes, he has a perfect right to put a car in there. Q. Isn't it your duty to watch and see when cars are put there? A. Yes. Q. As a matter of safety to yourself, it is your duty. A. It was; but if the car had been in the right condition, them bearings hadn't been there, he would not have put the car there the first time, because he couldn't get any further. Q. You mean the mine car was broken down? A. It was."

Again we quote from his testimony the following:

"Q. You say whenever they put a car in there behind one of those machines the custom is to notify you? A. Walker does; yes sir."

Norman Gardner was the helper of Eaton, and corroborated his testimony as to the manner in which he was injured as he was backing the cutting machine out through the neck or entry of the room where it had been cutting coal.

Earnest Walker was also a witness for the plaintiff. He was the driver who left the defective coal-car in the entry or neck of the room where Eaton had been cutting coal with the machine. According to his testimony, he set the car in the entry because it was defective, and testified that he did not notify Eaton that he had set the car in there. We quote from his direct examination the following:

"Q. Is it customary to set a car in a room, behind one of those rooms, without notifying the machine runner? A. Well, I don't know as it is customarily or not customarily. I always try to work to the advantage of anything that way, to keep any one from getting hurt or anything, but I always generally notify the people, or digger. Q. You notify them that the car is in that situa-

tion? A. Yes sir. Q. And you ordinarily do that for the purpose of preventing an injury to them, is that it? A. I do. I try to keep any one from getting hurt.''

We also quote from his cross-examination as follows:

''Q. You've been there four years? A. Yes sir. Something like that. Q. You stated to Mr. Patterson that you did not notify Eaton that you had placed the car there? A. I didn't that time. At times, why, if it is handy and such like, I hollo, 'Here is a car'. Or 'Watch out, George,' I generally say, 'Here is a car here', or something like that. But, if it was handy for me to put in on other switches, I do so on account of not having to handle no cable. Q. There is no rule requiring you to give him notice? A. I haven't had any notice served on me to do that at all. Q. You never had any orders to serve notice on him? A. No sir. I just taken it for granted on myself. Q. Just do it yourself? A. In order to keep any one from getting hurt or anything like that.''

Again, we quote from his direct examination:

''Q. You didn't notify Mr. Eaton that you had put it in there? A. No sir. Not that time I didn't. Q. You ordinarily do that to prevent a fellow getting hurt? That is your custom? A. Yes sir. I take that on myself to hollo at them.''

According to the evidence for the defendants, there was no rule or regulation requiring Eaton to be notified that a coal-car, whether defective or otherwise, had been set in the entry of the room where an employee was operating the cutting machine. It was also shown by the defendants that one of their servants notified the plaintiff that the car was in the entry room and directed him to switch it. The plaintiff was injured while engaged in switching the car. It was also proved by the defendants that it was the duty of the operator of the cutting machine to keep a watchout to see whether there were any obstructions on the track when he started to move his machine out of the room where he had been cutting coal.

The jury returned a verdict for the plaintiff in the sum of $225, and from the judgment rendered the defendants have duly prosecuted an appeal to this court.

*James B. McDonough,* for appellant.

*G. O. Patterson,* for appellee.

HART, J., (after stating the facts). It is earnestly insisted by counsel for the defendants that the evidence is not legally sufficient to support the verdict, and in this contention we think counsel is correct. Counsel for the plaintiff asked a recovery upon the theory that the defendants were negligent in failing to notify the plaintiff that one of their servants had placed a defective coal-car in the neck or entry of the room where the plaintiff had been engaged in operating a coal-cutting machine.

In testing the legal sufficiency of the evidence to sustain a verdict in favor of the plaintiff on the ground of the negligent failure of the defendant to notify him that the coal-car had been placed in the entry, the evidence must be viewed in the light most favorable to the plaintiff. When this is done, however, we are of the opinion that the plaintiff, by his own testimony, has precluded himself from recovery. It failed to establish the fact that it was a rule or regulation of the company to notify him that a defective or other coal-car had been set in the entry of the room where he had been operating the cutting machine. He says in one place that they generally notified him, but this falls short of establishing a regulation to that effect. We have quoted from his cross-examination upon the question of notice. In this the plaintiff admitted that, under the mining regulations, the driver of the coal-car had a perfect right to put the coal-car in the neck or entry of the room where he was operating the cutting machine, and that it was his duty to watch and see when cars were put in there. His only excuse is that, if the coal-car had not been defective, Walker would not have put it there. Thus it will be seen that, under the plaintiff's own testimony, there was no duty upon the part of Walker to notify him that the defective car had been placed in the entry.

On the other hand, the plaintiff expressly admitted that it was his duty to watch out for himself and see when coal-cars were placed in the entry. Once more, in his testimony, the plaintiff was asked if it was not the custom to notify him when a car was placed in the entry, and he answered, "Walker does, yes sir." This merely shows that it was the practice of Walker to notify the operators of cutting machines when he placed coal-cars in the entries of the rooms in which they were working, but it does not establish that there was any rule or regulation to that effect.

Indeed, the testimony of Walker himself shows that, while he generally notified his fellow-servants that he was leaving a car in the entry, he did that to prevent them from getting hurt, and not because of any rule or regulation requiring him to do so. He was expressly asked if there was a rule requiring him to give such notice, and answered that he was not required to give the notice by the company, but he just did it himself in order to keep any one from getting hurt. As he expressed it, he took it for granted, and gave the notice usually by holloing at his fellow-workmen that he had placed a car there. Thus it will be seen that no duty devolved upon Walker to notify Eaton that the defective coal-car had been placed in the entry.

There being no rule or regulation requiring such notice to be given, no recovery could be had against the defendants because of their failure to do something which, under their rules and regulations, they were not required to do.

In this connection it may be stated that rules are important and necessary where the conduct of the business is complicated or dangerous, or where it is obvious that the safety and protection of the employees depend upon their adoption and enforcement, the failure to adopt and enforce proper rules or regulations for the proper management of the business in such cases is negligence. *Ft. Smith Lbr. Co.* v. *Shackleford,* 115 Ark. 273, 171 S. W. 99; *Evans* v. *B. L. & A. S. R. Co.,* 147 Ark. 28,

227 S. W. 257; and *Arkansas Natural Gas Co.* v. *Sealy,* 167 Ark. 1, 267 S. W. 569.

In such case, however, the burden of showing an omission of duty in these respects, if they existed, is upon the plaintiff; and, in the absence of any evidence to the contrary, the presumption is that the defendants adopted and enforced all rules and regulations reasonably necessary to the management of their business. In the case at bar, no proof that the business was so dangerous or complex that a rule requiring notice to be given that defective or other coal-cars had been set in an entry of the mines was necessary for the protection of those operating the coal-cutting machines. On the other hand, the undisputed. testimony shows that no such rules or regulations are necessary. Two men are engaged in operating a coal-cutting machine, which is run into the room where it is used, on tracks extending into the room from the main entry, and the cutting machine is backed out on the same tracks. The operator of the machine, by looking behind him for an instant, before he backed his machine into the neck or entry of the room, could tell whether or not there was a coal-car on the track. It is true that, for their own convenience and safety, drivers of coal-cars generally told operators of cutting machines when they placed a coal-car in the entry, but this they were not required to do, under the rules and regulations of the company, and such practice was not necessary for the safety of the  operators of the cutting machines. Hence negligence could not be predicated upon the failure of the driver of the coal-car to give notice to the operator of the cutting machine that he had deposited a coal-car in the entry of the room.

It follows that the court erred in not directing a verdict for the defendants, and, for that error, the judgment will be reversed; and, inasmuch as the case on the facts seems to have been fully developed, the cause of action will be dismissed.