MOSLEY *v.* RAINES.

Opinion delivered April 6, 1931.

Richardson & Richardson, for appellant.
W. P. Smith and O. C. Blackford, for appellee.

MEHAFFY, J. The appellee was engaged in the construction of a new warehouse or express building at Hoxie, Arkansas, for the American Railway Express Company. The appellant was one of the employees of Raines, the contractor. On the 12th day of May, 1930, while the employees were engaged in doing excavation work at the place where the defendant was to erect the warehouse, appellant was injured, and he brings this suit to recover damages for said injury.

The employees had excavated a place about three feet wide, four feet deep, and the length of the building site. There was a concrete slab about three feet high and about eight inches thick extending out into the excavated place. This slab had to be broken off and removed. The appellant and four other employees were directed to get into the excavated place and break the concrete slab with a piece of railway rail which was about nine feet long and very heavy. They undertook to break the slab by punching against it with the end of the rail. While the plaintiff was in the excavated place assisting in breaking the slab, it broke, fell toward plaintiff and the other employees, and plaintiff, attempting to get out of the way of the slab as it fell, jumped back and struck an iron crowbar which had been put across the ditch behind appellant. The appellant did not know the bar had been put across the ditch, and it prevented him from getting out of the way of the concrete slab as it fell, and the slab fell on his leg and foot and injured him. The appellant alleged that the appellee was negligent in failing to furnish a safe tool and appliance with which to perform the work, and also that appellee was negligent in putting the crowbar where it was, thereby preventing appellant's

escape from the falling concrete. The appellant also alleged that Hamilton, who it was alleged placed the bar across the ditch, was a vice-principal, and failed to warn appellant of the danger caused by the bar being there.

The appellee answered, denying all the material allegations of the complaint, and alleged that appellant was guilty of contributory negligence, and that he assumed the risk.

Appellant testified, in substance, that they had excavated a ditch for the foundation of the building, which ditch was about three feet wide and shoulder deep; that the concrete ran all the way in the ditch on one side, and that they had taken all of it out except about two and a half or three feet, which was sticking out into the ditch which had to be broken off; the slab was about 3½ feet tall and eight inches thick; that Hamilton, who was the foreman and in charge of the work, told employees to get into the ditch and break the concrete; that appellant and four other employees went into the ditch under Hamilton's orders to break the slab; they had a regular railroad rail about 9 or 10 feet long with which to break the slab, and they broke it by jabbing the end of the rail against the slab; that Hamilton told them to do this. Some of the workmen were on one side of the rail and some on the other side. Appellant was nearest the slab. When they started to break the slab, there was nothing to prevent his jumping back; that he knew there was nothing behind him because he had just walked through the ditch. They used the rail by catching hold on it and swinging it, and punching against the slab with the end of it; that, when the slab broke, it fell over toward him, and he jumped backward in order to get out of the way of it, and, as he jumped back, he struck the crowbar which had been placed across the ditch, and, if, this crowbar had not been there, he would have gotten out of the way by jumping back. He did not know who put the crowbar there and did not know it was there. When the concrete broke it fell on his foot and leg and injured him. This was not

the first time that he had used a rail, but it was the first time he had used it in that way. The bar was about 3½ feet behind him, and he was facing the slab. There was nothing to prevent his seeing it if he had been looking, but he was watching the slab. He did not think there was any danger in punching the slab, and thought if it broke he could get out of the way; he did not think the slab would fall, but thought that they would crack it up and take the crowbars and pry it loose, but it broke all at once and fell on him. The crowbar was not on the ground but was in the ditch. There was a caved-off place on one side of the ditch, and the end of the crowbar was lying in that place and the other end jabbed into the wall.

William McNees, another employee, testified to substantially the same facts as the appellant, except he testified that the crowbar was across the ditch before they started to work, and that Mosley was between the crowbar and the concrete when it broke. This witness also testified that the crowbar was to hold the rail up, and that they all knew it was there, but Mosley, being in front, may not have known. All the employees were jammed up against one another. He knew of nothing to keep Mosley from seeing the bar; that when Hamilton handed the bar down he told them what to do with it, but he did not know whether Mosley heard him or not; the employees put the crowbar in first and the steel rail on top of it.

T. L. Mosley, son of appellant, testified to substantially the same facts as appellant except that he said the crowbar was put in after the appellant started breaking the concrete; that it was placed there by Jack Hamilton, the foreman; that the rail did not rest on the crowbar.

At the close of the testimony the court directed a verdict in favor of appellee, and judgment was entered accordingly. This appeal is prosecuted to reverse said judgment.

In testing the correctness of the verdict which was directed to be returned in favor of appellee, we must give the testimony its strongest probative force in favor

of the appellant in determining whether or not there was any negligence shown by the evidence. If there was any substantial evidence tending to show negligence on the part of the appellee resulting in injury to appellant, it would be the duty of the trial court to submit the question of negligence to the jury. It is the province of the jury to pass upon the credibility of witnesses and the weight to be given to their testimony. *McLeod* v. *Des Arc Oil Mill Co.*, 131 Ark. 594, 190 S. W. 932; *Sou. Gro. Co.* v. *Bush*, 131 Ark. 153, 198 S. W. 136; *Vaughan* v. *Hinkle*, 131 Ark. 197, 198 S. W. 105; *Bennett* v. *Buckeye Cotton Oil Co.*, 132 Ark. 381, 200 S. W. 993; *Beach* v. *Eureka Traction Co.*, 135 Ark. 542, 203 S. W. 834; *Kirby* v. *Wooten*, 132 Ark. 441, 201 S. W. 115; *Scott* v. *Robertson*, 145 Ark. 408, 224 S. W. 746; *Brotherhood of R. R. Trainmen* v. *Merideth*, 146 Ark. 140, 225 S. W. 337; *Ark. Mining Co.* v. *Eaton*, 172 Ark. 323, 288 S. W. 399.

The master owes the servant the duty to exercise reasonable care in furnishing a safe place to work and safe tools and appliances. Appellant, however, concedes that he cannot recover on the theory that appellee failed to furnish safe tools and appliances, but he contends that the master was negligent solely on the ground that the foreman placed or caused to be placed a short distance behind appellant while he was in a ditch only about three feet wide and approximately six feet deep, a crowbar across the ditch in such a manner as to block and prevent appellant's escape from the concrete after being broken, which was certain to fall toward him, and that the master therefore failed to furnish him a safe place to work.

The master is not only bound to exercise reasonable care to furnish a safe place to work, but the servant has a right to assume that the master has performed his duty. It is, however, also thoroughly established by the decisions of this court that the master is presumed to have performed his duty, and the servant cannot recover for an injury unless he shows that the master was guilty of negligence and that the negligence of the master

caused his injury. The master is liable for the consequences of his negligence, but he is not an insurer of the employee's safety.

As we have said, the only negligence relied on is placing a crowbar across the ditch. The appellant himself testified that he did not know who put the crowbar there. Therefore his testimony fails to show any negligence on the part of the master.

William McNees, a witness for the appellant, testified that Hamilton, the foreman, handed the crowbar down from the bank. and that it was placed in a jog on one wall and rested on the other wall, but he testified very positively that it was placed there before they started breaking the concrete, and he did not know whether Mosley knew it or not, but there was nothing to keep Mosley from seeing it. This witness testified that the crowbar was put there for the steel rail that they were using to rest on. The steel rail was a railroad rail 9 or 10 feet long and very heavy. There is nothing therefore in McNees' testimony tending to show any negligence on the part of the foreman.

T. L. Mosley, a son of the appellant, testified that, when they got in the ditch, the rail was lying on the bank, and that the crowbar was put across the ditch by Hamilton, the foreman, when they were in the ditch. He said they were down there hammering on the concrete, and the crowbar was put in while they were hammering, and that the rail did not rest on the crowbar. It therefore appears that T. L. Mosley, son of the appellant, is the only witness who testified that Hamilton put the crowbar in the ditch after the employees got into the ditch and began to hammer on the concrete.

If Hamilton did what young Mosley says he did, was he guilty of negligence? Negligence is the doing of something that a man of ordinary prudence would not do under the same circumstances or the failure to do something which a man of ordinary prudence would have done under the circumstances.

There were four laborers in the ditch besides the appellant. None of them, however, testified except Mc-Ness and young Mosley. They saw the crowbar there, and made no complaint about it, and evidently did not think there was any danger from it. If young Mosley had thought there was any danger, he certainly would have notified his father. It was put there, according to McNees' testimony, who was called by the plaintiff, for the purpose of holding the rail or letting the rail rest on it, and the appellant himself testifies that he did not think there was any danger in punching at the slab, and thought if it broke he could get out of the way, but he also said that they had been working there 4 or 5 days and that he thought that they might do like they had been doing. They had broken and removed all of the concrete except this one piece, and in breaking it, according to appellant's testimony, it would crack up, and they would then take the crowbars and pry it loose so that they could handle it. He said the crowbar was in the ditch about three feet high.

Witness knew as much about how to break and remove the concrete as anybody; there was nothing there that he could not see, and, while there was an unfortunate accident, we do not think the evidence shows any negligence.

It is not sufficient for a servant to show that he was injured and that the injury resulted from failure to furnish a safe place to work or defect in machinery, but he must go further and establish the fact that the injury happened because the master did not exercise proper care in the premises. *Bryant Lumber Co.* v. *Stastney,* 87 Ark. 321, 112 S. W. 740; *St. L. I. M. & S. R. Co.* v. *Gaines,* 46 Ark. 555; *Graysonia-Nashville Lbr. Co.* v. *Whitesell,* 100 Ark. 422, 140 S. W. 592; *K. C. Sou. Ry. Co.* v. *Cook,* 100 Ark. 467, 140 S. W. 579; *Wheeler* v. *Ellis, ante* p. 133; *Rice & Holiman* v. *Henderson, ante* p. 355.

There is no evidence in this case tending to show that the master was guilty of negligence.

The judgment is affirmed.

Mr. Justice Kirby dissents.