SPARKMAN HARDWOOD LUMBER COMPANY *v.* McCANN.

4-3761

Opinion delivered March 11, 1935.

*Huie & Huie* and *Buzbee, Harrison, Buzbee & Wright*, for appellant.

*J. H. Lookadoo*, for appellee.

MEHAFFY, J. This suit was instituted in the Clark Circuit Court by the appellee, W. D. McCann, against the appellant, Sparkman Hardwood Lumber Company, to recover damages for injuries sustained on January 4, 1934, when a bridge fell in with him while he was crossing said bridge, hauling logs belonging to appellant, from a place on a road out of Sparkman to appellant's mill in Sparkman. Appellee was in the employ of the appellant, hauling logs, for which he was paid $2 a thousand feet for the logs he hauled.

The appellant operates a large mill engaged in manufacturing lumber, both pine and hardwood, at Sparkman, Arkansas, and has employees hauling logs into the mill from different places out of Sparkman.

Appellee did not load the logs; they were loaded by other employees, but the appellee owned the truck and controlled the number of logs that was placed on his truck. The bridge which gave way was on the public highway.

The appellee alleged in his complaint that he was hauling logs for the appellant under direct orders and

supervision of appellant's foreman, who told him where to get the logs and over what route to haul them. He alleged that he was in the exercise of ordinary care and did not know the condition of the bridge. He was seriously injured. He also alleged that the appellant's officers knew the condition of the bridge, or, by the exercise of ordinary care, should have known the condition of the bridge; that appellant carelessly and negligently had appellee to drive onto the bridge with a load of logs.

The appellant answered, denying the allegations of the complaint, and pleaded the negligence of the appellee and assumption of risk.

The evidence shows that the bridge was rotten and unsafe. The evidence also shows that the Sparkman Lumber Company had been keeping up the bridges at other places, over which logs were hauled for appellant, but there is no evidence that the appellant had ever repaired or kept up the bridge that fell with appellee, or that the appellant knew the condition of this bridge. Logs either had to be hauled over this bridge, or over a road which was very much longer and very inconvenient. The bridge belonged to the county, was on a county road, and there is no evidence tending to show that it was under the control of the appellant.

There was a jury trial, a verdict and judgment for the appellee for $10,000. This appeal is prosecuted to reverse said judgment.

There is no dispute about the bridge being defective and no dispute about appellee being severely injured. The contention of the appellant is that it is not liable because it says it owed no duty to maintain the bridge or to inspect the bridge or warn the appellee about it.

It is a general rule that the master owes to the servant the duty of exercising ordinary care to furnish the servant with a reasonably safe place in which to work, and, if the master fails to exercise care in this respect and the servant is injured, the master is liable. The master, however, is not always liable for injuries to the servant because the place to work is not safe, but he is usually liable. As a general rule, he is not required to

exercise care to furnish a safe place to work on premises which he does not own and over which he has no control.

Appellee calls attention to 39 C. J. 333. It is there said: ''And if a master so uses and deals with instrumentalities or appliances in his business as practically to adopt them as his own, he becomes, as to his servant, the owner and is under the same duty to the servant as if he was the owner.''

There is no evidence in this case that the master adopted this bridge as his own, and no evidence that the master had ever done any work on this bridge. If the appellant directed the appellee to use this road and cross this bridge, it would then be its duty to exercise reasonable care to keep it in repair. Or, if appellee was directed to haul these logs and there was no other way to get them to the mill except to cross this bridge, the appellant would then owe the appellee the duty to exercise reasonable care to keep the bridge in repair, and, if it failed to do this and the appellee was injured, the appellant would be liable.

Appellee calls attention to and relies on *Arkadelphia Lbr. Co.* v. *Smith,* 78 Ark. 505, 95 S. W. 800. In that case the lumber company furnished handcars to its teamsters to convey them from their work to their homes. The handcars were operated over a portion of the road that did not belong to the lumber company, but it was used in transporting logs from the lands of the lumber company to its mill. It was understood when a teamster was employed that he would be furnished with a handcar for such purpose. But the court said in that case: ''Under these circumstances, when it furnished them with a handcar to be used on the lateral road, it became bound and liable to them in the same manner and to the same extent it would had the road belonged to and been controlled by it. It assumed the same duties and liabilities.''

In the instant case the appellee furnished his own truck, and it is not shown by the evidence that the appellant had any control or management over the bridge that collapsed. It is not shown that it was necessary to use this bridge. The only thing shown with reference to that is that it would have been very inconvenient to go another

road.  There is not only no evidence that appellant had control over this bridge, but there is some evidence that the appellant sent lumber to put in some of the county bridges.  It might very well have had authority to put lumber in one bridge without having any authority at all to repair this bridge.  One witness testified that he knew the bridge was defective, and he had made complaint to the overseer of the road.

Section 5289 of Crawford & Moses' Digest makes it the duty of the overseer of road districts to cause bridges to be made wherever necessary and to keep the same in repair.  The county, of course, has control of the bridges, and the law requires the overseer to keep them in repair. It was probably for this reason that the witness applied to the road overseer.

When we speak of the duty of the master with reference to exercising care to furnish a safe place to work, we generally mean place or premises owned or controlled by the master, and not places owned and controlled by third persons.  The rule is stated in Bailey on Personal Injuries as follows:

"Where the master neither has nor assumes possession or control, legal or actual, of the premises where the servant is at work, the duty does not rest upon him to furnish a safe place to work.  The duty of the master in respect to the place is founded essentially upon his occupation, use and control of the premises.

"But the fact that the master merely leases the premises does not absolve him from liability on the ground that the place to work is unsafe.

"Nor is the master's liability affected by the fact that, as between such master and his landlord, the latter is to keep the place in proper condition and repair.

"So it is immaterial that the unsafety in the place of work arises from defects in the appliances of an independent contractor." Bailey on Personal Injuries, vol. 1, 212-213.

Therefore, if the master either leases the premises or has any arrangement by which he has control, or if he directed the servant to use this bridge, in either event

it would be the master's duty to exercise care to inspect and repair.

" 'It is well settled that an employer is not responsible for an injury sustained by his employee, caused solely by unsafe premises which are owned and controlled by a third person, and where the employee's services are performed. The reason of the rule is that the employer does not own, use or control the premises,' and hence is without power to make any change in their condition." *Long* v. *John Stephenson Co.,* 73 N. J. Law 186, 63 Atl. 910; *Sharpley* v. *Wright,* 205 Pa. 253, 54 Atl. 896; *Hughes* v. *Malden & Melrose Gas-Light Co.,* 168 Mass. 395, 47 N. E. 125; *Trask* v. *Old Colony Ry. Co.,* 156 Mass. 298, 31 N. E. 6; *Harding* v. *Ry. Transfer Co. of Minneapolis,* 80 Minn. 504, 83 N. W. 395; *Hawkes* v. *Broadwalk Shoe Co.,* 207 Mass. 117, 92 N. E. 1017; *Granara* v. *Jacobs,* 212 Mass. 271, 98 N. E. 1029; *Wilson* v. *Valley Imp. Co.,* 69 W. Va. 778, 73 S. E. 64, 45 L. R. A. (N. S.) 271.

The above authorities all hold that the master is not liable where he does not own the premises and has no control over them. But they also hold that, notwithstanding the master may not own the premises, he may still be liable if he has any right to repair, or any control over the premises, in the same manner and to the same extent as if he owned the premises.

In this case, if the appellant either had any right to repair the bridge, or if it had directed the use of this bridge by the servant, it would be liable for neglect or failure to inspect and make repairs, just as if it owned the bridge. The appellant used this bridge, but the use of it alone, unless it had directed the servants to use it, would not make it liable. It was a public bridge, every one had a right to use it, and the public did use it. But, in order to make the master liable, it would be necessary for the servant to show that the master either had control or right to repair, or directed the servant to use it, or had employed the servant to haul logs to its mill from a place where it was necessary to cross this bridge. In other words, he must show that the master was guilty of some act of negligence. If it were necessary for the log haulers to cross the bridge, and the master either knew, or by

the exercise of ordinary care could have known, that the bridge was defective and dangerous, it would be its duty to repair it.

The judgment of the circuit court is reversed, and the cause remanded for a new trial.

SMITH, McHANEY and BUTLER, JJ., concur.