NEELY *v.* GOLDBERG.

4-4964

Opinion delivered March 7, 1938.

*Buzbee, Harrison, Buzbee & Wright,* for appellants.

*O. E. Gates, Max M. Smith,* and *Rowell, Rowell & Dickey,* for appellee.

DONHAM, J. This appeal involves the question of whether appellants are liable to appellee for damages for personal injuries sustained by him when the truck he was driving fell through a bridge on the Geisreiter farm in Jefferson county, Arkansas. Appellants are engaged in a wholesale and retail gasoline and oil business in Pine Bluff. Their customers are scattered over Jefferson and other counties adjacent thereto. Some of their customers live and have their places of business at points removed several miles from a paved or graveled highway. In making deliveries of gasoline and oil to their customers a tank car or truck is used and this must be driven over country roads, many of them being of the unimproved type.

On the day of appellee's injuries, appellee was directed by the manager of appellants' said business in Pine Bluff to make a delivery to one Griffin, who owned

and ran a sawmill several miles in the country north of the Arkansas river and five or more miles from the paved highway. His tank car was loaded with 669 gallons of oil and gasoline, the weight of the load being 4,415 pounds. The weight of the truck without the load was 6,200 pounds. The truck was a one and a half ton Chevrolet truck equipped with a tank that would hold 669 gallons. The truck was loaded to the full capacity of the tank. The reason for loading the truck to its capacity was that other deliveries were to be made on the same trip and it was necessary to load the truck to capacity in order that these deliveries might be made on the same trip. Appellee complained that he did not know how to reach the Griffin mill, since he had never been there. Whereupon, he was given a drawing showing the road to be traveled, also the bridge that fell when the truck was driven upon it, resulting in his injuries. This drawing had been prepared by Griffin to whom the delivery was to be made or under his direction. Appellee testified that he was told by his superior, the manager of appellants' business, that the road and bridge were safe; and that the manager assured him that they were safe, and he supposed the manager was speaking from personal knowledge.

Mitchell, the manager, testified that no one connected with appellants' said business had any personal knowledge of the road or bridge and that he told appellee that all he knew about the road and bridge was what Griffin, the mill owner, had said; and that Griffin had said they were safe and he so stated to appellee.

Appellee based his claim for damages on alleged negligence of appellants in overloading the truck, and in not exercising ordinary care to furnish him a reasonably safe bridge, and in negligently assuring him that the highway and bridge were safe. The appellants defended on the grounds of no negligence on their part and assumed risk and contributory negligence on the part of the appellee. The issues were submitted to a jury and a verdict was returned in appellee's favor for the sum of $2,000. From the judgment based thereon, appellants appealed.

Generally speaking, the law does not place upon an employer the duty of inspection and repair of premises not under the employer's control. As a general statement of law, it is well settled that an employer is not liable for an injury sustained by his employee caused solely by unsafe premises where the employee's services are performed when the employer does not own the premises and has no control over them. The reason for this rule is that the employer does not own, use or control the premises, and, hence, is without right to make any change in their condition. *Sparkman Hardwood Lumber Co.* v. *McCann*, 190 Ark. 552, 80 S. W. 2d 53.

Appellants could not be expected, speaking generally, to exercise care to make the roads and highways safe for use by appellee in making deliveries of the products purchased from appellants. Appellants' customers were not confined to the city of Pine Bluff, but were scattered throughout Jefferson county and probably adjacent counties. In making these deliveries it was necessary for appellee to use all kinds of roads, improved as well as unimproved, public as well as private. This court has even held that there is no liability for failure to exercise care to make a pathway safe along which a railroad employee was required to walk in the performance of his duties. The employee's foot became entangled in a wire hoop lying in the path. In denying recovery to the injured employee, the court based its decision on the fact that the place of work was not stationary; that is, it was not a shop or railroad yard where men are continually at work, but was a spur track where the men had been at work only a short time and where they were not expected long to remain. The court held that in such cases it would be imposing the highest degree of care, rather than ordinary care, to require the employer to keep his tracks clean, where and while the men were at work, of any and all objects which might occasion an injury. *Caddo River Lumber Co.* v. *Henderson*, 194 Ark. 724, 109 S. W. 2d 425.

In a recent case, *M. E. Gillioz, Inc.*, v. *Lancaster, ante* p. 688, 113 S. W. 2d 709, this court held that where the place of work and the danger incident thereto were con-

stantly changing there was no duty on the part of the employer to exercise care to make the place of work reasonably safe, and that under such circumstances negligence could not be predicated on an alleged failure of the employer to make the employee's place of work safe. It was further held that under such circumstances the employee assumes the risk.

If there had been no assurance of safety in the instant case, the rule set out above would make it the duty of this court to reverse the judgment and dismiss the case. However, the jury was warranted in finding, as evidently it did find, that Ralph Mitchell, the manager of appellants' business, gave appellee a drawing of the roadway on which the bridge that fell in and caused appellee's injuries was designated. Appellee did not know the way, had never been over the road before and made inquiry as to the condition of the road. The jury was further warranted in finding that said Mitchell assured appellee that the road and bridge were safe. Appellee testified that he made some objection to loading the truck to full capacity; and that he was assured by Mitchell that the road and bridge were safe and, therefore, that the truck should be loaded to full capacity. Furthermore, this was a private road across the Geisreiter farm. It was a private bridge. While it was used to some extent by the public, it was in the possession and under the control of the manager of the Geisreiter farm. It is the contention of appellants that in furnishing appellee the drawing showing the road and bridge and in giving such assurance of safety as was given, Mitchell was only passing on to appellee information which he had obtained from Griffin, the mill owner, to whom appellee was to make the delivery of gasoline and oil which said Griffin had purchased. We are of the opinion that this would make no difference. There is no question but that appellee was directed by Mitchell to use this specific route and to pass over this specific bridge. As stated above, the jury was warranted in finding that when Mitchell directed appellee to use this road and to pass over this bridge, he assured appellee that the bridge was safe and

that he could safely pass over same with the truck loaded to its full capacity.

In the case of *Sparkman Hardwood Lumber Co.* v. *McCann, supra,* this court said:

"The appellant used this bridge, but the use of it alone, unless appellee had directed the servants to use it, would not make appellee liable. It was a public bridge, everyone had a right to use it, and the public did use it. But in order to make the master liable, it would be necessary for the servant to show that the master either had control or right of repair, or directed the servant to use it, or had employed the servant to haul logs to its mill from a place where it was necessary to cross this bridge."

It is evident from the above-quoted holding in the McCann case that where the employer gives specific directions to his employee to use a certain bridge, if the employee is injured in carrying out the specific directions of the employer, the employer cannot escape liability on the ground that there is no duty to exercise care to see that the bridge is reasonably safe. Especially would this be true if, as in the instant case, there was an assurance of safety. Hence, we hold that the jury was warranted in finding that the appellants were negligent in the respect hereinabove pointed out; and that they would be liable to appellee for injuries resulting from said negligence, unless appellee assumed the risk. There are three exceptions to the rule that an employee assumes the risks ordinarily incident to his employment. One exception is that the servant does not assume the risk incident to his employment because of defects in appliances or places of work when there has been a promise on the part of the employer to repair and thereby to remove the defect. Another exception is that the servant does not assume the risk of injury incident to his employment when the work is being done under the immediate direction and control of the employer. A third exception is that a servant does not assume the risk of injury incident to his employment because of defects in appliances and places of work when there has been a specific assurance of safety. 18 R. C. L. 696; 18 R. C. L. 701-03; *Moline Timber Co.* v. *McClure,* 166 Ark. 364, 266 S. W. 301. There

was a specific assurance of safety in the instant case; and, therefore, appellee did not assume the risk. Appellee testified that he relied on this assurance of safety; and that he would have exercised greater vigilance in ascertaining whether the bridge was safe if he had not been assured by Mitchell, his superior, that it was safe. An employer cannot lull his employee into a sense of security by an assurance of safety and then escape liability for injuries resulting to the employee in relying on this assurance. In such cases, the employee does not assume the risk. We, therefore, hold that the appellee in the instant case did not assume the risk.

There is one other feature of the instant case that has given this court much concern, and that is, whether the evidence of the appellee, making reference to an insurance company, was prejudicial and whether under the circumstances it calls for a reversal. We here set out in full what occurred in the trial of the case with reference to this matter. Appellee was asked by his counsel the following questions and gave the following answers: "Q. Do you know the exact gallons you had? A. I knew the exact gallons, but I didn't know the weight of it. Q. Did you rely—but, first, did you later know the weight of that load? A. Yes, sir, after I talked to the insurance company. Q. Who did you talk to? A. Mr. Thomas, with the insurance company. He asked me how many gallons I had and I told him 669 gallons, and he said: 'How much does gasoline weigh?' and I said: 'I don't know, I imagine it weighs around eight pounds,' and he said that truck was overloaded—after he figured it out.

"Mr. Rowell: Judge, Mr. Thomas, representing the —(interrupted).

"Mr. Buzbee: I think that argument should be made in chambers."

Then the court and counsel retired to the court's chambers; and counsel for appellants moved the court to declare a mistrial "because of the prejudicial reference by the witness to an insurance company and an insurance representative, and because the witness knew what he was trying to do when he made that answer; and the prejudice is such that it cannot be removed by any ad-

monition of the court and any admonition which the court may make to the jury with reference to the exclusion of this testimony on the ground that an insurance adjuster was mentioned will create a more definite prejudice than may exist at this time.''

''Court: Request for a mistrial overruled over the objections and exceptions of the defendants.''

The court and counsel then went back into the court-room; and the court admonished the jury not to consider the evidence of the witness as to the weight of the truck and with respect to the number of gallons of gasoline and the weight thereof, holding that such evidence was incompetent, because it was purely hearsay, the witness saying that his information was received from other parties. To this ruling of the court the defendants objected, their objections being overruled and exceptions were saved.

In the case of *Peay* v. *Panich,* 191 Ark. 538, 87 S. W. 2d 23, the court had under consideration the refusal of a trial court to permit counsel to interrogate a witness on direct examination with reference to his signing a written statement at the solicitation of the insurance adjuster. It was argued by counsel that the trial court erred in not permitting counsel to thus examine the witness. In passing upon this contention, this court said: ''This contention presents no error. We have several times held that questions not dissimilar to the one propounded by appellant's counsel were improper and, if pursued, highly prejudicial.''

In the last-above case, the court further said: ''We understand the great weight of American authority to be that any unnecessary reference to an insurance company which has insurance on the subject-matter of the risk is improper and prejudicial.''

Exhaustive annotations on the subject may be found in 56 A. L. R. 1418; 74 A. L. R. 849; and 95 A. L. R. 388.

Attention is called to the case of *Terry Dairy Co.* v. *Parker,* 144 Ark. 401, 223 S. W. 6. In this case a witness was asked on cross-examination if he had not talked about the injury and in that connection if he had not stated that the injured party was working for Terry Dairy Com-

pany and that said company carried insurance to cover such injuries and, therefore, the company did not care anything about it. This question was objected to by counsel for the company and the court ruled that the portion of the question making reference to insurance, was not competent and could not be answered. The court instructed the jury that no reference to an insurance company could be considered. It was held that the prejudicial effect, if any, of the improper question was removed by the decided ruling of the court holding that the question was incompetent. It will be noted in the instant case that when the court and counsel retired to the court's chambers, counsel for appellants, in moving the court to declare a mistrial, stated that the prejudice which had resulted from the evidence of the witness relative to an insurance company was such that it could not be removed by any admonition of the court; and that any admonition which the court might make to the jury with reference to the exclusion of the testimony on the ground that an insurance company was mentioned would create a more definite prejudice than that which existed at that time. This statement of counsel seems to be, at least, an implied request on the part of counsel that the court make no further reference to the matter. Hence, when the court and counsel re-entered the courtroom, the court instructed the jury not to consider the evidence of the witness as to the number of gallons of gasoline with which the truck has been loaded and not to consider the weight of the load, as testified to by appellee, because these statements of appellee were purely hearsay. No mention was made as to the insurance feature. This evidently was due to the implied invitation on the part of counsel for appellants to the court not to make any further mention of this matter. It is probable, had the court admonished the jury not to consider what the witness had said about the insurance company and its agent and had stressed the fact that it was improper, that the prejudicial effect, if any, of such statements on the part of appellee would have been wholly removed. But, owing to the implied invitation for the court not to admonish the jury, the court refrained from doing so. Therefore, it seems clear that

error cannot be based upon the court's failure to admonish the jury not to consider the reference of appellee to the insurance company. If counsel for appellant had desired that the court admonish the jury that it was improper for appellee to have made reference to an insurance company, they should have made request for him to have done so. Not having made such request, but on the contrary having impliedly invited him not to so admonish the jury, no error can be based upon the failure of the court to admonish the jury.

We hold that the jury was warranted in finding that appellants were guilty of negligence in assuring appellee that the bridge was safe and that appellee could safely pass over it with the truck and its load. We further hold that the jury was warranted in finding that appellee did not assume the risk of driving over said bridge, because he had been given an assurance of safety and lulled into a sense of security by such assurance. We further hold that inasmuch as there was no request for the court to admonish the jury that it was improper for the appellee to have testified concerning the insurance company and its agent, there was no such error in this respect as would call for a reversal of the case. It follows, from what we have said, that the judgment must be affirmed. It is so ordered.

GRIFFIN SMITH, C. J., and McHANEY, J., dissent.