AMERICAN BRIDGE CO. OF NEW YORK v. BAINUM.

(Circuit Court of Appeals, Third Circuit. June 29, 1906.)

No. 35.

**1. MASTER AND SERVANT—INJURY OF SERVANT—NEGLIGENCE OF MASTER.**

Plaintiff, who was 16 years old, and was employed by defendant as a tool boy for a gang of workmen, was sent by the foreman to bring some tools from an island which was reached by a bridge passing over the island at a height of about 60 feet, from which a stairway had been built down to the ground. The island and stairway were owned by a third party. There had been some ice on the stairway in the morning, but it had melted off, except where shaded by the bridge on the upper part. Plaintiff was told to hurry, and had obtained the tools, and climbed a little more than half way up the stairs, when he slipped, and, having both arms occupied in carrying the tools, was unable to catch the railing, and fell under it to the ground and was seriously injured. *Held*, that no negligence could be imputed to defendant or its foreman which would render it liable for the injury, either because plaintiff was not warned of the danger, or because he was required to carry too great a load; it appearing that he was strong and intelligent, and that he was not given any direction that he must bring all of the tools at one time, but that the injury was the result of an accident, the risk of which was incident to the employment.

**2. SAME—SAFE PLACE TO WORK—LIMIT OF MASTER'S DUTY.**

The duty of a master to provide a reasonably safe place in which his servant shall work does not extend to safeguarding the route of every journey the servant may be required to make in fetching and carrying, whether messages or portable articles.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

See 141 Fed. 179.

Samuel McClay, for plaintiff in error.

Ward Bonsall, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

GRAY, Circuit Judge. In November, 1902, the defendant in error and plaintiff below, Frank E. Bainum, was employed by the plaintiff in error and defendant below, the American Bridge Company of New York, as a tool boy, to take care of the tools and carry them to the different workmen engaged in the structural work of the company. Plaintiff was then a minor of 16 years and 10 months of age. The defendant was a construction company at that time, and was engaged in steel structure work. On the 29th of November, 1902, defendant was engaged in doing some construction work on the main land of the Ohio river, at the south end of the Ohio Connecting Bridge. This bridge crosses the Ohio river a few miles below Pittsburgh, at Brunot's Island, and runs over the island at a height of about 60 feet. From the bridge down to the island, there was a stairway, in two flights, at an angle of about 45 degrees. The bridge was owned by the Pittsburgh Railways Company, and the stairs had been erected and were owned by the Philadelphia Company, which owned Brunot's Island. The

defendant company, sometime prior to the 29th of November, 1902, had been engaged in construction work on said island, and on the date last mentioned still kept tools in a chest on the island, at the foot of these steps. From the point where the defendant was at that time at work on the main land, at the south end of the bridge, to these steps, was a distance of between half and three-quarters of a mile. On the said 29th of November, one Riddle, a foreman of the defendant company, at about 11 o'clock in the forenoon, ordered the plaintiff to go from the work at the south end of the Ohio Connecting Bridge to the tool chest on the island, and bring back certain tools, to wit, a crosscut saw, a foot adze, a spirit level, an auger, a carpenter's square, and about two dozen wire nails, and the foreman's lunch box. As a number of workmen were waiting for these tools, the foreman told him to hurry up. The plaintiff started upon his errand, and crossed the bridge which spanned the Ohio river, to the stairs which led down to Brunot's Island. He descended these, went to the tool chest and got the tools for which he was sent. The stairs were a wooden structure, erected by the Philadelphia Company for its own purposes, and consisted of two flights; the first, leading from the ground, terminated at a small platform about 27 feet from the ground, at which commenced another flight at right angles to the first, which led to the top of the bridge. As far as appears from the testimony, these stairs were well constructed and were furnished with a wooden hand rail on one side. After loading himself with the tools, the plaintiff started to return by these stairs which he had just descended, and had taken one or two steps on the second flight, when his foot slipped on some ice on the tread of the step, and, rolling under the hand rail, he fell to the ground below, causing the serious injuries complained of. One of the witnesses called by the plaintiff, one of defendant's workmen, testified that at seven o'clock on that morning, the stairs were "a little bit slick—a little icy." It had thawed that day, and at the time of the accident this slippery condition had disappeared, except where the steps of the second flight were shaded by the bridge. The foreman, on cross-examination, testified that he had been down and up these stairs about eight o'clock that morning, but he was not asked and did not say anything as to their condition, and there is no other testimony from which any inference as to the existence of a dangerous condition from ice on these steps could be inferred, or that their condition was in any respect such as to impress either the foreman or the witness who ascended them an hour before, that they were especially dangerous.

In the suit brought by the plaintiff, it is charged that the defendant had erected the steps in question for the use of its employés, and had carelessly constructed them, in that they were without sufficiently secure balusters or railing, and were consequently in a dangerous condition. It also charges negligence, in that the slippery condition of said steps being known to defendant and unknown to plaintiff, the defendant, in violation of its duty to plaintiff, "did negligently, carelessly and wrongfully compel plaintiff to ascend said steps, with neither hand free for protecting himself, as defendant did not give plaintiff sufficient time to make two trips, but required undue haste from plaintiff in get-

ting all the articles from Brunot's Island to the western end of the bridge," whereby plaintiff was thrown from the steps and suffered the injury complained of. The only evidence to support this allegation is, as already stated, that the foreman, in giving the plaintiff the order to fetch the tools from Brunot's Island, told him to "hurry up," the reason for so telling him being that certain of the work under the foreman's charge would be delayed until the tools were brought. The trial resulted in a verdict and judgment for the plaintiff, and the case is here brought upon a writ of error sued out by the defendant.

The assignments of error raise a question as to the propriety of certain amendments to the record allowed by the court upon the petition of the plaintiff before and at the trial. They also allege objections to certain portions of the charge of the court to the jury, brought up in the record upon exceptions thereto duly signed, and they also allege that the court improperly refused peremptory instructions to the jury, upon the whole evidence, to render a verdict for the defendant.

The view taken by this court of the last-mentioned assignment of error, renders it unnecessary to consider the questions raised by the others. We therefore confine ourselves to the consideration of this last-mentioned assignment. The negligence averred in the declaration is the failure of the corporation defendant, in performing its primary duty as master, to sufficiently safeguard the place in which, and the conditions under which, the plaintiff, as its employé, worked. There is an entire absence of conflict in the testimony sent up in the record, as to material facts. Neither these facts nor any legitimate inference to be drawn from them, seem to us to justify a finding by the jury, that the plaintiff suffered the injuries complained of, by reason of any negligence of any primary duty of the defendant, as master and employer, to the plaintiff, as servant or employé. The premises where the accident happened were not the property of nor controlled by the defendant, as alleged in the declaration. That defendant's employés had, with others, the right accorded them of using the bridge and the stairs as a means of access to the island, did not render the defendant responsible for conditions that might exist between the island and the structure which it was engaged in erecting. The plaintiff, though a minor, was not of tender age, he being 16 years and 10 months old at the time of the accident. There is no testimony showing that he was otherwise than as active and strong as boys of that age, living in the open air and accustomed to work, are apt to be. His weight was 130 pounds, indicating average size and strength for his age, and the rate of his wages, $2.25 a day, tends to show that he was not regarded by his employers as inferior in bodily strength or intelligence. There was nothing unusual about the errand upon which he was sent on the morning of the accident, or the occasion for it. Nothing appears in the circumstances testified to, to render the order of the foreman to "hurry" an improper one. A boy of plaintiff's age, accustomed to the work in which he was employed, was as capable of taking care of himself in his progress to and from the island, a distance of a half or three-quarters of a mile, as were any of the adult workmen of defendant, or as the foreman him-

self. Indeed, it would not be unreasonable to expect that such an errand would be better and more safely performed by a boy of the intelligence and activity belonging to his age, than by an older person. He had covered the entire route in going to the island, and must have observed the condition of the stairs, if they were dangerous enough to attract his attention, and it can hardly be said that he was exposed to any special danger in ascending the steps on his return. He had been there more than once before on the same kind of an errand. That he undertook to carry all the articles for which he had been sent, at once, cannot be imputed to the defendant as negligence, even if he so understood the order of the foreman. His own judgment seems to have been that he was able to do so, from the fact of his having undertaken to do it, and having safely ascended the first flight of the stairs. The plaintiff seems to have been an active and willing lad, and to have performed the errand upon which he was sent with zealous alacrity. The deplorable consequences of his slipping with his unwieldy load were the result of one of those accidents, the possibility of which attends every one in his progress from place to place, whether on business or on pleasure. One undertaking employment of the character of that undertaken by the plaintiff, undertakes the ordinary risks incident thereto. He must needs go from place to place outside of and away from the particular locality where the employer's work is being carried on. Indeed, when leaving the premises of his employer, such a person can hardly be said to have a definite "place to work in," within the meaning of the rule as to the duty of the master to render reasonably safe the place in which the servant is to work. It is absurd to suppose that the master's duty to provide a reasonably safe place in which his servant shall work, extends to safeguarding the route of every journey he may be required to make in fetching and carrying, whether messages or portable articles.

There is no evidence that the foreman knew what the condition of the stairs was, as to being icy on any part of them. But even if we are to assume that he had the same knowledge as the one witness who testified that at 7 o'clock that morning, when he used them, they were a "little bit slick—a little icy," it cannot be imputed as negligence to the defendant, that he, the foreman, did not admonish the plaintiff in regard to their condition. It was not a permanent condition, much less one due in anywise to any dereliction on the part of the defendant. It was a casual condition, due to constantly recurring states of temperature, conditions that were observable by the most ordinary intelligence, and at such seasons requiring everywhere and at all times to be guarded against, and demanding only the most ordinary care to avoid their danger. In this case, it was a danger of which the servant was better cognizant than the master, and one which the admonition of the master would not have rendered less. It was clearly not a danger as to which there was a duty of instruction by the employer. The case has no analogy to one where an inexperienced person, or a boy of tender years, is placed at work with or near dangerous machinery, without special instruction and caution as to

the danger incurred, nor is it a case, as we have seen, in which the rule that a master must use ordinary care to provide a safe place in which the servant shall work, is applicable. The injury complained of, sad and deplorable as it undoubtedly is, resulted from an accident incident to everyday life, and no more capable of being foreseen by the defendant than by the plaintiff.

From what has been said, we think it must be apparent that no inference of negligence imputable to the defendant can be drawn from the undisputed facts testified to before the jury. Even if Riddle, the foreman, stood in the relation of vice principal to the master, in giving the order to the plaintiff testified to, there was nothing in the physical situation, the circumstances surrounding it, or the mutual relations of the parties, from which a conclusion could be reasonably drawn, that it was his duty at the time of giving the order, to have instructed the plaintiff as to the existence of ice on the steps. In what other way he could have protected the plaintiff, is not suggested. It is true, that it is contended by the appellee, that from the facts of the case, as above recited, an inference of negligence on the part of the defendant can legitimately be drawn, in that the plaintiff was not required by the foreman to make two trips instead of one, in bringing the tools. It is also alleged in the declaration, that plaintiff was under compulsion to bring the tools at once, and thus overload himself, and also to proceed with undue haste. There is absolutely no evidence of such compulsion on the part of the foreman, and none can be inferred from the simple order to bring the tools and to hurry. The compelling motive, so far as it can be inferred from the evidence, seems to have been a commendable zeal on the part of the plaintiff to perform the work he had undertaken promptly and to the satisfaction of the foreman.

In the view that there was no evidence of negligence on the part of either the master or of the foreman, it is unnecessary here to discuss any question of the relation of fellow servant between the foreman and the plaintiff, or the assignments of error as to certain parts of the charge of the court to the jury.

For the reasons stated, we are constrained to the conclusion that the court erred in refusing the defendant's request to charge the jury, that under the evidence in the case the verdict must be for the defendant, and the judgment below is therefore reversed.