## Israel, Appellant, *v.* Lit Brothers.

*Negligence—Master and servant—Safe place to work—Premises of third persons—Defects—Death—Effect of employer's knowledge of defect—Judgment for defendant n. o. v.*

1. It is not the duty of the master to acquaint himself with the condition of the premises of third persons to which he sends his servants to work, and where such premises are not controlled by him, he will not be liable for the death of a servant, caused by defects thereon unless he had knowledge of such defects.

2. A purchaser of a stock of merchandise, in bulk and in place, at a receiver's sale, before opportunity afforded to remove the goods, placed a night watchman about the premises to whom was entrusted a key to the building. *Held,* that this did not show such exclusive control of the building by the purchaser as charged the

purchaser with the duty of maintaining the building in reasonably safe condition for employees engaged in removing the goods.

3. Where an employee of the purchaser of a stock of goods, while engaged in removing them from the building of the former owner, was killed as a result of defects in an elevator in such building, his employer could not be held liable in damages therefor, in the absence of evidence that he knew or should have known of the defects in the elevator.

Argued Jan. 7, 1915. Appeal, No. 199, Jan. T., 1914, by plaintiff, from judgment of C. P. No. 4, Philadelphia Co., Sept. T., 1912, No. 5491, for defendant n. o. v., in case of Hannah Israel v. Lit Brothers. Before BROWN, C. J., POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before WILLSON, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $7,000. The court subsequently entered judgment for defendant n. o. v.

*Error assigned* was the judgment of the court.

*James Gay Gordon*, for appellant.—The defendants should have exercised reasonable care to have discovered the condition of the elevator prior to the accident: Martin v. Atlantic Transport Co., 237 Pa. 15; Sharpley v. Wright, 205 Pa. 253; Elkins v. Pennsylvania R. R. Co., 171 Pa. 121; Dooner v. Delaware & Hudson Canal Company, 164 Pa. 17; Clow & Sons v. Boltz, 92 Fed. Repr. 572.

*F. B. Bracken*, for appellee.—The defendants owed no duty to their employees to inspect the premises where the accident happened or to make them safe before sending their employees there to remove the purchased goods: McKenna v. Martin & Nixon Paper Co., 176 Pa. 306; Welch v. Carlucci Stone Co., 215 Pa. 34; Sharpley v.

Wright, 205 Pa. 253; Rehm v. Pennsylvania R. R. Co., 164 Pa. 91; Anderson v. Oliver, 138 Pa. 156; Dixon v. Western Union Tel. Co., 71 Fed. Repr. 143; Hardy v. Shedden Co., 78 Fed. Repr. 610; Channon v. Sanford Co., 70 Conn. 573 (40 Atl. Repr. 462); Whallon v. Sprague Electric Elevator Co., 37 N. Y. Supp. 174, 1 App. Div. 264; Nelson v. Scott, Croall & Sons, 19 Sess., 4th Series, 425; Regan v. Donovan, 159 Mass. 1 (33 N. E. Repr. 702); Moynihan v. King's Windsor Cement Dry Mortar Co., 168 Mass. 450; Hughes v. Leonard, 199 Pa. 123; Hughes v. Malden & Melrose Gas Light Co., 168 Mass. 395 (47 N. E. Repr. 125).

OPINION BY MR. JUSTICE STEWART, March 15, 1915:

The defendant company is engaged in conducting a large department store in the City of Philadelphia. One Kurtz, the owner of a smaller concern of like general character, located in a four-story building at Marshall street and Girard avenue, in the same city, having been adjudged insolvent, the stock of merchandise belonging to him passed into the hands of a receiver. The receiver after disposing at a bargain sale of a certain portion of the stock of merchandise on hand, on 12th May, 1912, sold what remained excepting the stock of jewelry and toys, to the defendant company in bulk. The goods thus purchased by the defendant consisted of chinaware in the basement, furniture and drygoods on the first floor, carpets and furniture on the second floor and furniture on the third floor of the building. On May 25th, the defendant sent its porters and teams to remove the goods, and until the 27th these men were engaged in removing the goods from the basement and the first and second floors. On the 28th they commenced to remove the goods from the third floor, and it was while so engaged that the accident here complained of occurred. The plaintiff's husband was a salesman in the furniture department of the defendant's store, and had been sent to the Kurtz store that day to tag the furniture before

it was taken by the porters to the wagons. An elevator connecting the several floors was ordinarily used in carrying the goods from the upper floors to the street floor, though there were stairs by which this same work could be done, but less conveniently and less expeditiously. The men engaged were without instructions as to which method they should observe. The elevator had been employed for like use by Kurtz while conducting his store, and by the receiver who succeeded him in control. It was what was known as a counter balance elevator operated by hand pulley, and within a shaft outside the wall of the building. The platform of the elevator was about five by six feet, and was flush with the shaft on the second and fourth floors, but on the third floor, while flush at the front and sides, there was an unguarded open space between platform and wall to the rear about twelve inches wide extending along the whole shaft. The porters had placed upon the elevator several pieces of furniture without tags to be lowered to the wagon. The plaintiff's husband observing this, stepped on the platform to tag the several articles, and while so engaged fell through the unguarded space between the edge of platform and rear wall, and by the fall lost his life. The action is by his widow charging the accident to the negligence of the defendant company. The trial resulted in a verdict for the plaintiff, which on motion was set aside, and judgment non obstante entered for the defendant. This appeal followed.

The negligence charged was failure by the defendant company to furnish the plaintiff's husband with a reasonably safe and fit place of employment and a reasonably safe and fit appliance with which to work, in that the elevator from which he fell was negligently maintained in a dangerous, unsafe and unfit condition for use in the work to which as an employee he was assigned. The safety of the place to which this employee was assigned is hardly to be questioned. The place was the third floor of an admittedly substantial building.

The defect that caused the accident was in the elevator, an appliance or instrument which the defendant's porters chose—very naturally, because of its greater convenience, but without suggestion from the defendant,—to employ as the means of delivering the goods purchased, from the third floor to the first, whence they were to be carried away by wagons. That it was such a defect that imperiled the safety of those using the elevator, and one which ordinary care and prudence would have corrected, is fully established by the verdict. It follows that a duty rested upon some one to correct it, or guard in some way those permitted to use it against the danger to which otherwise they would be exposed. If such duty rested on the defendant, the verdict should not have been disturbed. We are of opinion, however, after careful study of the evidence, that the defendant was under no legal duty to correct the defect or supply the deficiency which caused the accident. Defendant stood in no relation whatever to this elevator, except that his employees had implied permission to use it, in the condition it was, as a means for carrying the articles defendant had purchased, from the several upper stories where they had been placed by their former owner down to the street where they could be loaded on wagons. Nor did it stand in other relation to the building in which the elevator was placed. It had implied permission to allow the goods it had purchased to remain a reasonable time in the building before removing. Such mere permission gave it no legal right to interfere with building or elevator by way of changing either, whether by addition or subtraction, to meet supposed requirements. No contract is alleged with either the owner of the building or the receiver, nor with anybody else, giving the defendant any other rights than those we have indicated. The learned counsel for plaintiff would derive from the fact that the defendant, during the period covering the removal of its purchased goods, had placed a night watchman in charge, to whom the key of the building

had been entrusted, an exclusive use and control of the building by the defendant, with a wider privilege and a corresponding larger liability in connection therewith. But we find no support for such conclusion. The defendant company was interested only in safeguarding the goods it had purchased. Any protection afforded the building or elevator by having a night watchman about the premises, was purely incidental to the one and only purpose of the defendant. Placing a night watchman there was no assertion of exclusive right in or control over the building, but was entirely consistent with the implied permissive use defendant was making of the building, which was by no means exclusive, as the evidence shows. Nevertheless, though defendant stood clear of all duty with respect to the maintenance of the elevator in reasonably safe condition, yet if with knowledge of its dangerous insufficiency, it permitted its use by its employees without caution and injury resulted, legal responsibility would ensue. This brings us to another question in the case: What was defendant's duty, not with respect to maintenance of the elevator in a reasonably safe condition, but, what if any duty did it owe to its employees with respect to the danger to which they would be exposed in using the elevator. Duty to interfere would arise only as the defendant had knowledge of conditions creating the danger. Actual knowledge in this case is not pretended. However, if a duty rested on the defendant to acquaint itself with conditions before sending its employees to work where the use by them of the elevator was to be anticipated, and it failed to discharge this duty, it would be charged with constructive knowledge of such conditions, and its liability would be the same. Here the employer did not inform itself as to the actual conditions of the elevator, and made no inquiry with respect to it. Such failure under certain circumstances would undoubtedly constitute negligence, and for any injury that resulted in consequence a defendant would be held liable, as where the elevator is

part of the defendant's plant, owned and used by the defendant in the ordinary course of its business. Such is unquestionably the general rule. The effort of appellant's counsel is to bring the case within this general rule by arguing that the evidence shows that, for the time being, during the period in which the defendant company was engaged in removing the purchased goods, the entire premises were in its exclusive custody and control, quite as much so as was its own proper plant, and that therefore, the place where the accident happened is not to be distinguished from the plant itself. We have already indicated what we regard as, under the evidence, the full limit and extent of the defendant's rights, in, upon, and about the premises in which the elevator was located, and with that question determined adversely to the appellant's contention, it only remains to inquire what, if any, legal responsibility rests on an employer where an employee is injured while engaged in the employer's work, but on the premises of a third party, through appliances and instruments furnished by such third party for the employees' use and convenience. It needs but a moment's reflection to be convinced, that to apply to such a case the general rule which makes it the duty of the employer to furnish his workmen with suitable and safe appliances with which to work, would lead to manifest injustice in a variety of ways. This is aptly illustrated in the opinion in Channon v. Sanford Co., 70 Conn. 573, where this is said: "It would in effect in many cases make the employer responsible for the negligence of third parties with reference to premises he had never seen, and about the conditions of which he knew, and perhaps could know, nothing. The merchant would in effect be liable to his clerk for the negligence of the customer with respect to the safety of the premises upon which the clerk goes to deliver his master's goods, and the master plumber or carpenter to his workmen for the negligence of the householder upon whose premises he sends the workmen, simply to make some slight repairs.

In all such cases the servant, if injured, without fault on his part, by the negligent failure of the owner or occupier of the premises to keep them in a reasonably safe condition, has his remedy against such owner, and in the absence of some agreement to that effect, has none against the master." In our own cases we find clear recognition of the distinction here emphasized, excepting out of the general rule of the master's liability, cases where the injury occurred because of unsuitable and unsafe appliances furnished by the owner of the premises on which the servant is doing the master's work. In Sharpley v. Wright, 205 Pa. 253, it is said by our Brother MESTREZAT, "It is well settled that an employer is not responsible for an injury sustained by his employee solely by unsafe premises which are owned and controlled by a third person, and where the employee's services are performed. The reason of the rule is that the employer does not own, use or control the premises, and hence he cannot be made responsible for injuries sustained by reason of their unsafe condition." A no less explicit recognition of the rule will be found in McGinnis v. Kerr, 204 Pa. 615. And so, as this case is presented, the accident complained of having occurred on premises not part of the defendant's plant and not owned or controlled by it, and through use of a defective appliance found on the premises, but not furnished by the defendant, or used by its direction, we conclude that no liability therefor attaches to the defendant. For the reasons stated the assignments of error are overruled and the judgment is affirmed.