## DRAVO CORPORATION *v.* COPELAND.

(In Banc. Jan. 20, 1941. Suggestion of Error Overruled, March 10, 1941.)

[199 So. 769. No. 34338.]

**Engle & Laub,** of Natchez, for appellant.

**Luther A. Whittington** and **Joseph E. Brown,** both of Natchez, for appellee.

Argued orally by **S. B. Laub**, for appellant, and by **L. A. Whittington**, for appellee.

**Alexander, J.**, delivered the opinion of the court.

Dravo Corporation was engaged in building piers for the bridge crossing the Mississippi River at Natchez. One of these piers, Pier No. 2, was located near the middle of the river. Pier No. 1 was located on the Mississippi side, but due to the low stage of the river at that time, stood on dry ground connected with the river bank. The plaintiff was engaged as a crane operator on Pier No. 2. In order to serve the convenience and safety of its employees and to expedite the work, the defendant undertook to transport its employees, including plaintiff, to and from their work by boat. Although the employees usually embarked from the Louisiana side, they were returned either to the Louisiana or Mississippi side, as the employee required.

Plaintiff lived at Natchez, on the Mississippi side. On the occasion in question the plaintiff quit work about 11:30 p. m. at Pier No. 2, and thereupon joined the other employees in a boat furnished by the defendant for a return to their respective destinations. Plaintiff was carried to the dry land Pier No. 1 and there disembarked, together with his companions. In following the route along and up the bank to the City of Natchez, plaintiff slipped and fell into a large hole or cave-in, and was injured.

The basis on which liability is sought against the defendant is shown by the following language from the declaration:

"Thereupon Plaintiff further avers and charges that it was the duty of the Defendant, its servant, agents and employees, in bringing the Plaintiff from his place of work out in the middle of the Mississippi River to the Mississippi shore, to transfer him to a reasonably safe place for landing on the shore. It being customary theretofore to bring the Plaintiff either to the ferry landing on the Mississippi side or on the Louisiana side. But Plaintiff avers and charges that notwithstanding its duty in this behalf on the night of October 20, 1939, Plaintiff. having finished his day's work, was required to get in the boat of the Defendant company or the boat then and there provided by the Defendant Company for carrying its employees back to shore, and was in and by means of said boat then and there under the control and direction of the Defendant, carried from said pier immediately across to the Mississippi shore where Plaintiff and others were required to disembark and from there undertake to find their way in the dark and along the densely wooded banks of the Mississippi River, that was full of holes and gullies and along a very dim and unlighted trail, in order to get back to the ferry landing and get a way to reach their homes.

"Plaintiff avers that the place he was required to disembark from said boat was about one-third of a mile below the ferry landing, was down under the bluff overlooking the banks of the Mississippi River, was filled with tree growth and washed with holes and that Plaintiff was not furnished and had no means of lighting any pathway through said shore up to the ferry landing, that it was wild and uninhabited shore for a distance of one-third of a mile from where he was forced to land.

"Plaintiff thereupon shows to the Court that as he was undertaking with others to reach a street of the City of Natchez from this place on the shore of the Mississippi

River, and as he was walking along a dim and narrow trail, that he stepped into a hole approximately 18 or 20' deep. . . .

"Plaintiff avers and charges that the sole and proximate cause of the injury received by him was the negligence of the Defendant in failing and neglecting to provide for the Plaintiff a safe landing place in transporting him as it was obligated to do, from its place of work in the Mississippi River to a landing place on the banks of the Mississippi River which would be reasonably safe as such landing place, and in failing to transport Plaintiff to a reasonably safe landing place on either the Mississippi or Louisiana shore; and in requiring the Plaintiff to leave the boat at a place that was wholly unfit and unsafe for one to be landed in the middle of the night on the shore of the Mississippi River, without there being provided any way of leaving said place of landing in order with reasonable safety to ones self, to reach his home."

Although it is contended for the plaintiff that there was not sufficient light at the time and place of the injury, there is ample proof that one of his companions carried and used a flash light. Despite a disagreement that the passageway was merely a trail or a narrow path, the plaintiff concedes that "there was a road going by there" and that it "looked like it had been traveled." Other testimony seems ample to establish that there was only one hole at that part of the way and that the way was seven feet wide at that point. Plaintiff concedes a width of three and a half or four feet. The hole was, according to the plaintiff, located about a half or quarter of a mile along the bank from the place of debarkation.

There is no proof that the defendant knew of the condition of the terrain over which plaintiff was to pass after debarkation, nor that there was only one passable route and that such route was so fraught with danger as to charge the defendant with a duty to prevision injury as a reasonable expectancy.

The master is not liable for injuries occasioned to a servant upon premises over which the master has no control and which he has neither duty nor right to repair. Sparkman Hardwood Lbr. Co. v. McCann, 190 Ark. 552, 80 S. W. (2d) 53; Gillespie's Ex'rs v. Howard, 219 Ky. 721, 294 S. W. 154; Hughes v. Malden & Melrose Gas Light Co., 168 Mass. 395, 47 N. E. 125, 3 Am. Neg. Rep. 144; Wilson v. Valley Improvement Co., 69 W. Va. 778, 73 S. E. 64, 45 L. R. A. (N. S.) 271, Ann. Cas. 1913B, 791; Lindgren v. William Bros. Boiler Mfg. Co., 112 Minn. 186, 127 N. W. 626; Powell v. Cohoes, 136 App. Div. 204, 120 N. Y. S. 336; Regan v. Donovan, 159 Mass. 1, 33 N. E. 702; Sharpley v. Wright, 205 Pa. 253, 54 Atl. 896; Long v. John Stephenson Co., 73 N. J. L. 186, 63 Atl. 910, 20 Am. Neg. Rep. 478; Hamilton v. Louisiana & N. W. R. Co., 117 La. 243, 41 So. 560, 6 L. R. A. (N. S.) 787.

Nor is a master liable for allowing or requiring a servant to be transported to premises of a third person, even though potentially dangerous, in the absence of actual knowledge by the master of an inherent condition which requires exposure by the servant to a danger so imminent and so reasonably unavoidable as to render resultant injury foreseeable as a reasonable probability.

Plaintiff, having traveled the route in question only once before, was content to follow the footsteps and leadership of his fellow workman, Curtis. Whether there were alternate routes reasonably available is not disclosed by the testimony.

The place of work with reference to which the defendant had a duty to use reasonable care to maintain as reasonably safe was Pier No. 2. The defendant had no such duty as to premises of third persons, and was under no duty to inspect them. It would unreasonably attenuate the doctrine of a safe place to work to project the master's responsibility on to other premises over which the servant may or must travel before or after engaging in the employment out of which alone arise all the duties owed to him by the master as such. Atkinson v. Corriher Mills

Co., 201 N. C. 5, 158 S. E. 554; American Bridge Co. v. Bainum, 3 Cir., 146 F. 367.

At the conclusion of the case the defendant requested a peremptory instruction in its favor. This instruction should have been granted.

Reversed, and judgment here for appellant.