**MONTEIRO v. PACO TANKERS, Inc. et al.**
**Civ. No. 9401.**

United States District Court
E. D. Pennsylvania.
Sept. 22, 1950.

94

Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Shaw, Philadelphia, Pa., for defendants.

FOLLMER, District Judge.

In this action the plaintiff, Monteiro, had been employed as a messman on board the Steamship "Kittanning", which was owned by the defendant, Paco. A dispute arose regarding overtime claimed by plaintiff for services performed during the voyage. The overtime services consisted in the squeezing of orange juice for the captain and the amount of overtime wages claimed was $15.

There was testimony from which the jury could find, and in the light of the verdict, I must assume did find the facts as hereinafter stated.

The steward, Demas, and the captain, Miller, had warned plaintiff not to claim for overtime in this situation and threatened him if he did so. Regardless of this warning, plaintiff submitted his claim.

Prior to the docking of the vessel at the end of the voyage on June 9, 1947, plaintiff remained in his quarters awaiting the arrival of a union patrolman to insure him a safe departure. The captain ordered plaintiff ashore as soon as the vessel reached the dock. After proceeding a short distance from the ship, and either just inside or outside the gate of the oil company plant at which the "Kittanning" had docked to discharge its cargo, plaintiff was attacked by Demas, who upbraided him for submitting a claim for the refused overtime and proceeded to give plaintiff a severe beating. As a result of this beating, plaintiff suffered an aggravation of an eye condition, was hospitalized for an extended period and has become permanently blind in his right eye. The case was tried to a jury and a verdict returned in favor of the plaintiff.

The matter is now before the Court (a) on plaintiff's motion for new trial solely on the issue of exemplary damages; (b) on defendant's motion for judgment, notwithstanding the verdict, or for a partial new trial limited to the question of liability.

The facts in this case are clearly distinguishable from those in Nowery v. Smith[1] in this Court. In the latter case, the seaman suffered the injuries which formed the basis of the action in a fist fight with the chief engineer while the seaman was on shore leave in a barroom. The seaman was a deck maintenance man and took his orders from the chief mate and not from the chief engineer. In granting a new trial in that case, Judge Bard said, inter alia, " * * * there was no basis, in law, for a finding that defendants are liable to Nowery on the theory that Nantau (the chief engineer), when he entered the barroom where the fight occurred, was acting 'as an officer of the ship.' As I have stated, that was one of the two theories on which the jury were instructed that they could find for the plaintiff. Nantau was not Nowery's superior officer; and there is nothing to connect the assault with any exercise of authority over Nowery, or with any discharge of a duty which defendants, through the master, had entrusted to Nantau."

In the instant case, the plaintiff, a messman, suffered his injuries as the result of an attack by his superior, Demas, the steward, on the premises of the oil company at which the "Kittanning" had docked. The plaintiff had previously retired to his quarters to await the arrival of a union patrolman for the obvious purpose of having protection in leaving the ship. Here the

1. Nowery v. Smith, D.C.E.D.Pa., 69 F.Supp. 755, 758.

captain, Miller, entered the picture and ordered plaintiff ashore as soon as the vessel reached the dock. In this connection I charged the jury as follows: "* * * When he (plaintiff) left the ship his duties with the ship were definitely terminated. However, the company's responsibility for his safety did not terminate. The obligations of the employer which I have mentioned extended beyond the point where he went ashore until he had actually and physically gotten away from the ship safely to such point as might be termed neutral territory."

I adhere to that statement as what in my opinion is a correct statement of the law.

The captain evidently resented the filing of this picayune claim by plaintiff, so much so in fact as to join with Demas in actually threatening plaintiff if he did so file. At the time of the assault plaintiff had ended his duties with the ship and was no longer subject to the orders of Demas, his immediate superior. However, even though his duties with the ship had ended, certainly the ship still owed to him a safe transport ashore.

 "* * * As a general rule an employee is deemed to be in the course of his employment while going to or from his place of work by the only practicable route of immediate ingress and egress." T. J. Moss Tie Co. v. Tanner, 5 Cir., 44 F.2d 928, 931. Here plaintiff was using the only route of egress. The testimony is not crystal clear as to whether the assault was immediately inside or immediately outside the gate to the oil company premises. Suffice it to say, the plaintiff still had a considerable distance to travel either to the parking lot or the bus stop. He was not on neutral ground. The relation of the captain to his crew is traditionally parental. He is their legal guardian in the sense that it is a part of his duty to look out for their safety and care, whether they make a distinct request for it or not.[2] In my opinion the captain of this ship owed to this plaintiff a very definite obligation for a safe deliverance from the ship until he was definitely on his own.

I feel the question was properly submitted to the jury and their verdict indicates that in their opinion the captain failed to meet that obligation.

An order will be entered denying defendant's motion for judgment notwithstanding the verdict, as well as defendant's motion for a partial new trial limited to the question of liability.

As to plaintiff's motion for a new trial solely on the issue of exemplary damages, there was no evidence from which the jury could have charged the defendant (a) with knowledge of the fact that in Miller or Demas it had employees of known vicious tendencies, (b) with having previously authorized the assault, or (c) with subsequently having ratified the assault. Under those circumstances I refused to submit the question of exemplary damages to the jury and in so doing I feel no error was committed.[3]

An order will be entered denying plaintiff's motion for a new trial solely on the issue of exemplary damages.

---

2. The Iroquois, 194 U.S. 240, 247, 24 S. Ct. 640, 48 L.Ed. 955.

3. Lake Shore & Michigan Southern Railway Co. v. Prentice, 147 U.S. 101, 13 S. Ct. 261, 37 L.Ed. 97.