**PAUL v. UNITED STATES et al.**

No. 19 of 1947.

United States District Court
E. D. Pennsylvania.
Nov. 21, 1951.

Freedman, Landy & Lorry, Philadelphia, Pa., proctors for libellant.

Krusen, Evans & Shaw, Philadelphia, Pa., proctors for respondent.

90

CLARY, District Judge.

This is an action by a seaman to recover damages for personal injuries sustained by him allegedly from the negligence of the respondent, United States of America. The facts have been stipulated between the parties and I am called upon to decide the issues on the basis of the following

### Stipulation of Facts

1. United States of America owned and operated the Steamship William Moultrie at all times material hereto.

2. Libellant was forty years of age on May 14, 1946, and has been a merchant seaman for over twenty years.

3. Libellant joined the Steamship William Moultrie on March 19, 1946 as Chief Engineer and was paid off and discharged at Norfolk, Va. on June 11, 1946. During his period of service on board said vessel, his gross earnings were $1,278.20 in wages, including a bonus of $70.

4. The Steamship William Moultrie sailed from Philadelphia on April 18, 1946 and arrived at the Port of Brindisi, Italy in the morning of May 6, 1946. The vessel was moored at a long dock which was constructed parallel to the shore line and did not extend out into the water. A railroad track ran the length of the dock, and alongside this track and parallel to it was a cement walkway. The cement walkway was accessible via three or four steps. It was above the level of the said track to the extent of the height of said steps.

5. The cement walkway on which libellant was walking on the occasion of his injury was about six or seven feet wide and several hundred feet long. It had no railings, and was sheltered by a V-shaped roof. There were no lights on the walkway.

6. On May 7, 1946, the dock at which the Steamship William Moultrie was moored was owned by the Italian Government, and both the said dock and the Port of Brindisi were under British Military control.

7. Libellant had been ashore in Brindisi the day before, in the daylight, on which occasion he elected to walk along the railroad track rather than use the cement walkway.

8. On the evening of May 7, 1946, the Port of Brindisi, Italy, was not blacked out and another American ship, the Steamship William Halstad, besides the Steamship William Moultrie was moored alongside the same dock, which was several ships' length in extent. (Lloyd's Register of Shipping states that the Steamship William Moultrie was 422 feet in length)

9. On May 7, 1946, after dark, libellant left the Steamship William Moultrie via the gangway, mounted to the walkway, and walked along it parallel to the railroad track until he reached a point about 100 feet beyond the bow of the Steamship William Moultrie, when he fell into an unguarded and unlighted hole which he did not see, and the presence of which he had been given no notice by the ship's officers or crew. This hole was about 2½ feet square and 4½ feet deep; it was a permanent part of the dock structure. It contained shunting gear used in the operation of the railroad track. The foregoing conditions existed when the Steamship William Moultrie docked on the morning of May 6, 1946, and continued until the evening of May 7, 1946 when libellant was injured.

10. As a result of his accident on May 7, 1946, libellant sustained a contusion of the right knee and an aggravation of a pre-existing arthritic condition.

11. Libellant received first-aid treatment aboard the vessel, at an English Army Dispensary in Brindisi, Italy, and at Trieste, Italy.

12. Libellant was a patient at the United States Marine Hospital in Baltimore, Maryland from August 28, 1946 to September 5, 1946, and received out-patient treatment at the United States Public Health Service in Philadelphia, Pennsylvania during the period from June 18, 1946 to November 6, 1946.

13. As a result of the injuries sustained on May 7, 1946, libellant was disabled from performing his usual seafaring duties from the date of his discharge from the Steamship William Moultrie, on June

11, 1946, until December 27, 1946. During said period libellant attended an engineering school at Sheepshead Bay, Long Island, New York, for a period of twenty-eight days, from September 19, 1946 to October 18, 1946.

## Discussion

The libel presents a claim both for maintenance and cure and for negligence. The maintenance and cure aspect of the case has been settled leaving only the question of liability of the respondent for negligence. The libellant asserts that the respondent was negligent in that it failed to provide him with a reasonably safe place to perform his duties, failed to provide him with a safe and proper passageway over the dock area, failed to provide adequate illumination along the route of access to and from the vessel, allowed an opening in the said passageway to be and remain open without adequate protection under the circumstances, failed to provide him with a safe means of ingress to and egress from the vessel, failed to give him adequate warning of unsafe and dangerous conditions prevailing along the route through the dock and finally failed to inspect all ways, means and equipment to determine the existence of any unsafe and dangerous condition.

The facts as stipulated present a very interesting problem, whether a shipowner is under a duty to provide seamen safe means of passage from the ship to a public street, over dock area over which the shipowner has no control.

■ At the outset, it is necessary to distinguish between the obligation of a shipowner to furnish maintenance and cure and his liability for negligence. The first mentioned obligation is one which arises out of the relationship of the shipowner and the seaman and may be characterized as liability without fault. In many respects it is analogous to modern workmen's compensation statutes in that the liability is limited in amount but greatly expanded in scope in the sense that there is no necessity to show fault on the part of the employer so long as the employee is injured in the course of his employment. The analogy is not a perfect one, however, in that under workmen's compensation statutes liability is limited to injuries sustained because of or while engaged in activities required by the employment, whereas, liability for maintenance and cure has been held to extend beyond the confines of the ship and to injuries incurred while not performing services for the ship. The result, therefore, has been to permit recovery for maintenance and cure while the seaman is off the ship on his own business on shore leave. Before the decision of the Supreme Court of the United States in Aguilar v. Standard Oil Company of New Jersey, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107, there was a conflict among the circuits as to the liability of the shipowner for maintenance and cure where injuries were sustained by the seaman when he was not aboard his ship. That case settled the conflict, at least to the extent of holding the shipowner liable for maintenance and cure for injuries sustained by the seaman while on shore leave where said injuries occurred in the dock area between the ship and the public street. The opinion summarizes the history of liability for maintenance and cure. Mr. Justice Rutledge points out that men cannot work long cooped up in the narrow confines of a ship without great impairment of efficiency and danger to discipline, that out of the nature of the work arises a necessity for relaxation off the ship which necessarily entails shore leave. Since it is the business of the ship which takes the seaman into strange places where he must find his relaxation, the seaman is regarded as being in the course of his employment even when on shore leave. That decision held that the duty on the part of the shipowner to supply maintenance and cure for such injuries extends at least to injuries sustained while in the dock area. It was not necessary to decide in that case whether injuries sustained outside the dock area come within the orbit of the shipowner's duty.

■ Libellant in this case seeks to have imposed upon the shipowner liability for negligence co-extensive in scope with the duty to furnish maintenance and cure as defined in the Aguilar case supra. This

would be a very broad expansion of the duties and liabilities of the shipowner and disregards the fundamental distinction between responsibility to furnish maintenance and cure which is, as I have pointed out before, a form of liability without fault, and liability for negligence which presupposes the existence of some duty. To hold the shipowner negligent under these circumstances would be to decide that he has violated a duty to inspect all possible avenues of access to the ship from the public street and correct all the dangers there found or to give warning to the seaman of the existence of such dangerous conditions. In support of his contention that the shipowner owes him such a duty, libellant has cited several decisions wherein recovery was allowed for injuries sustained off the ship, none of which I consider expressive of any such duty on the part of the shipowner. The cases cited fall generally into two broad categories. On the one hand, those cases in which there was some active negligence on the part of the ship shown and, on the other hand, those cases involving assault and battery on a seaman away from the ship but arising out of disputes on the ship. In the first category is included the case of O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596. In that case, a seaman was injured while working on the dock alongside the ship with equipment connected with the ship and he was injured there by the negligence of his fellow employee. This case actually is one in which the injury can be considered as having happened on the ship since the loading equipment involved did actually connect with and extend from the ship.

Another case is Marceau v. Great Lakes Transit Corporation, 2 Cir., 146 F.2d 416. In that case, some flour had been swept onto the dock from the ship and thereafter the ship was moved and the ladder which the seaman was required to use to get onto the ship was placed at a point a few feet from the flour and in such a position that the seaman had to pass that spot in order to get onto the ship. The seaman slipped on the flour and was injured. Here we have two acts of negligence; first, in sweeping the flour onto the dock and allowing it to remain there and, second, placing the ladder within a few feet of the flour.

Another case cited by the libellant is Walton v. Continental Steamship Co., D.C., 66 F.Supp. 835. Actually this case is of no help to libellant. There was a coal chute some twenty feet from the gangway and during a blackout the seaman walked up the coal chute, mistaking it for the gangway, fell from it and was injured. While the court found that there was some negligence on the part of the ship because of the failure of the watchman to be present at his post at the head of the gangway to light the way of the returning seaman onto the ship, the court held that there was no negligence regarding the presence of the coal chute since it did not belong to the ship and was not related to it in any way.

In none of these cases is there any expression of a duty on the part of the shipowner to inspect the various routes through the dock area to the public streets and to give warning of any condition discovered through such inspection or to make them safe.

In the second category of cases are Monteiro v. Paco Tankers, Inc., D.C., 93 F.Supp. 93, and Kyriakos v. Goulandris, 2 Cir., 151 F.2d 132. These are assault cases and may be considered as sui generis and have no bearing on the problem before me.

Both the libellant and respondent have cited the case of Farrell v. United States, 2 Cir., 167 F.2d 781, and the language of the opinion as supporting their respective contentions. Farrell was injured in the Port of Palermo, Italy, during the war in a dock area then under control of respondent United States at a time when he was returning to his ship. There the similarity to the present case ends. The respondent had control of the dock area in the Farrell case and in the instant case it had no control. The question of negligence naturally was an issue in the Farrell case under its facts and the legal principles involved dealt only with the duty of one in control of the dock area. It called for no extension of familiar principles of law as to that duty. Here libellant seeks to

extend the duty of a shipowner beyond the immediate vicinity of the gangway to the dock and to include the area the seaman must traverse to reach a public highway. No case has been cited by the libellant supporting that proposition and research has failed to disclose any cases indicating such a duty on the part of a shipowner. In the absence of compelling authority, I see no warrant in law in imposing such an obligation on a shipowner.

### Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter.

2. The injuries sustained by the libellant on the dock at Brindisi were not caused by negligence of the respondent, United States of America.

3. The respondent is entitled to judgment in its favor.