## PAUL v. UNITED STATES et al.

### No. 10895.

United States Court of Appeals
Third Circuit.

Argued Feb. 6, 1953.

Decided June 8, 1953.

Rehearing Denied June 29, 1953.

Biggs, Chief Judge, dissented.

Joseph Weiner, Philadelphia, Pa. (Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellant.

John B. Shaw, Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty. for the Eastern District of Pennsylvania, Philadelphia, Pa., Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Other than in the immediate vicinity of a vessel's gangplank, is a shipowner under a duty to provide safe means of passage from or to the vessel over a dock area over which the shipowner has no control and/or to inspect and give warning of the conditions prevailing along the dock's passageway?

That is the primary issue presented by this appeal from the Order of the District Court for the Eastern District of Pennsylvania decreeing judgment in favor of the United States in an action in admiralty to recover damages for injuries sustained.

The facts were stipulated and appear in the District Court's Opinion, E.D.Pa.1951, 101 F.Supp. 89. They may be summarized as follows:

Libellant, in May 1946, was Chief Engineer of the SS. "William Moultrie" owned and operated by the United States. He was at the time 40 years of age and had been a merchant seaman for over 20 years. The vessel arrived at the Port of Brindisi, Italy, on the morning of May 6, 1946. It was moored at a long dock which was constructed parallel to the shore-line. A railroad track ran the length of the dock, and alongside the track and parallel to it was a cement walkway which was accessible via three or four steps. The walkway was six or seven feet wide and several hundred feet long. It had neither railings nor lights and was unguarded. About 100 feet beyond the bow of the "William Moultrie" there was a recess in the walkway about two and one-half feet square and four and one-half feet deep. The recess was a permanent part of the dock structure and was designed to contain shunting gear used in the operation of the railroad track.

Following the mooring on May 6th, the libellant went ashore during daylight hours. At that time he chose to walk along the railroad track rather than use the walkway. After dark, on the evening of May 7th, the libellant again went ashore on liberty. On that occasion he mounted to the walkway and proceeded along it until he fell into the recess previously mentioned, sustaining a contusion of his right knee and aggravation of a pre-existing arthritic condition.[1] The libellant had not been given notice of the existence of the recess by the ship's officers or crew. At the time, the Port of Brindisi was not blacked-out.

On the facts as stated the District Court found that the injuries sustained by the libellant were not caused by negligence of the United States. It should be noted that while the libel sought recovery of maintenance and cure in addition to damages for negligence, prior to the District Court's disposition the parties settled the maintenance and cure aspect of the case leaving open by stipulation only the question of damages for negligence.

On this appeal the libellant contends, as he did below, that (1) it was the shipowner's duty to provide safe egress from the vessel and that the duty was breached; and (2) it was the shipowner's duty to inspect and warn the libellant of the existence of the recess in the walkway and that this duty too, was breached.

With respect to libellant's first point, it should be observed that he maintains the duty to provide safe egress continues *until the seaman reaches the public highway* and is not limited to egress from the ship to the dock. Anent libellant's second point, it is his view that the shipowner's duty to give warning arises out of the parent-child, guardian-ward relationship of shipowner-seaman.

In making the contentions above stated, libellant asserts that the duty to provide a safe means of ingress to, and egress from, the vessel is part and parcel of the traditional duty on the part of a vessel to provide its seamen with a safe place in which to work.

Libellant has cited a number of cases to support his position but unfortunately for him they fail to do so.

Thus in Marceau v. Great Lakes Transit Corporation, 2 Cir., 1945, 146 F.2d 416, 418 a seaman recovered damages for injuries sustained when he slipped, while returning to work, on an accumulation of wet flour some three to five feet from the foot of an ill-lighted ladder leading from the dock to the vessel's deck. The Court held that the jury reasonably could have found that the *flour was swept from the vessel to the dock* and that the shipowner was negligent in *causing or permitting the condition at the foot of the ladder* to exist and in failing to

1. Libellant received treatment in Brindisi and Trieste, Italy. He was a patient in the United States Marine Hospital, Baltimore, Maryland from August 28, 1946, to September 5, 1946, and received out-patient treatment at the United States Public Health Service in Philadelphia, Pennsylvania at various times from June 18, 1946 to November 6, 1946. Libellant was unable to work from the date of the termination of the "William Moultrie"'s voyage on June 11, 1946 until December 27, 1946. During this period he attended Engineering School from September 19, 1946, to October 18, 1946.

provide proper lights under the circumstances. Moreover, the Court pointed to the fact that the seaman "was acting under orders when he returned to the ship" and "consequently at the time of the accident he was not only acting in the course of his employment but suffered his injuries *while on property in the possession and under control of the defendant* * * *." (Emphasis supplied.)

Sassaman v. Pennsylvania R. Co., 3 Cir., 1944, 144 F.2d 950 on which libellant has placed great reliance is inapposite. There we merely held that for an injured employee to be able to claim a right of action under the Federal Employers' Liability Act [2] it must appear that his injuries were sustained either upon the premises where he normally performed duties of his employment or upon premises so closely adjacent thereto as to be part of the working premises in the sense that the employee was required to traverse them in going to or upon leaving his work. We did not hold in that case that an employer is under a duty to provide safe ingress and egress to the place of employment since the point was not in issue.[3]

Patrick v. Atlas Knitting Co., 164 App. Div. 753, 149 N.Y.S. 845, 847, is likewise not in point. There the employee was killed while crossing the New York Central's tracks adjoining the factory and the Court held that an actionable claim was presented. However, the record disclosed that the *only* means of egress from the employer's premises was over the railroad tracks and on that score the Court said: "It will not answer for the master to turn his employes out at twilight upon the tracks of the most used railroad in the United States, where the swiftest trains in the world are constantly passing and repassing. This does not comply with the law."

In Walton v. Continental S.S. Co., D.C. Md.1946, 66 F.Supp. 836, the seaman on his return to his ship in the dark mistook a coal chute for the gangway which was some 20 feet distant and was injured. The chute belonged to or was under control of the dock and had no relation to the ship. The Court held the evidence was sufficient to establish a slight degree of negligence on the part of the shipowner in that a gangway watchman whose duty it was to guide seamen across the gangway with a flashlight was absent from his post at the time of the accident. Rather pointedly, however, the Court stated 66 F.Supp. at page 839: "*I find no negligence attributable to the ship with respect to the coal chute. It belonged to or was under the control of the dock owner.*" (Emphasis supplied.)

As evidence of the duty of the shipowner to exercise "parental care" towards seamen, libellant has cited cases in which liability was imposed under the Jones Act, 46 U.S.C.A. § 688, for assaults committed on seamen by fellow crew members while ashore. With respect to them the District Court properly held they "may be considered as sui generis and have no bearing on the problem before me."[4] [101 F.Supp. 92.]

As was stated by the District Court, the libellant has failed to cite a single case which supports his position.

A number of cases have evidenced a contrary viewpoint although none of them may fairly be said to be four square with the issue here presented.

In Todahl v. Sudden & Christenson, 9 Cir., 1925, 5 F.2d 462, 464, a seaman was injured by falling into a hole on the dock

2. 45 U.S.C.A. § 51 et seq.

3. In point of fact our finding was that the Federal Employers' Liability Act was inapplicable by reason of failure of proof that the employee and employer were engaged in interstate commerce at the time of the accident. Furthermore, the employee there was injured because of a defective condition on the employer's own property.

4. In Koehler v. Presque-Isle Transp. Co., 2 Cir., 1944, 141 F.2d 490, the libellant was assaulted by a fellow crew member while on and off the ship. It was held that the officers of the ship were negligent in that they should have known of the assailant's vicious nature and thus should have discharged him. To the same effect are Nowery v. Smith, D.C.E.D.Pa. 1946, 69 F.Supp. 755, and Kyriakos v. Goulandris, 2 Cir., 1945, 151 F.2d 132. Cf. Monteiro v. Paco Tankers, Inc., D.C. E.D.Pa.1950, 93 F.Supp. 93.

when returning to his ship after going ashore to make some private purchases. The dock was in control of a charterer of the vessel. In a suit against the charterer and the owner, a demurrer by the owner was sustained. Affirming the trial court, the Court said:

"The owners of the steamship owed him the duty of providing a safe place in which to perform his work as a seaman. That duty did not extend to his protection when going beyond the premises of his employment for purposes of his own *and over premises of which his employers had no dominion or control.*" (Emphasis supplied.)

Also militating against appellant's position is the case of Lemon v. United States, D.C.Md.1946, 68 F.Supp. 793, where it was held that there is no obligation upon the shipowner to furnish transportation to and from shore to seamen granted shore leave when their ship is far from dock. The seaman in that case returned to the ship in an unseaworthy launch, of his own choosing, and upon arrival at the ship, was found dead in the cabin of the launch. The cause of his death was asphyxiation by fumes of carbon monoxide gas which had enveloped the cabin of the launch. To recover against the shipowner it was necessary to show an obligation to provide safe transportation for the members of the crew. But the court held that there was no obligation to provide transportation at all. *A fortiori*, it would seem, there was no duty to inspect the various launches to ascertain their safety. See

also Lilly v. United States Lines Co., D.C. S.D.N.Y.1941, 42 F.Supp. 214, 215;[5] Kuhn v. P. J. Carlin Constr. Co., 1937, 274 N.Y. 118, 8 N.E.2d 300, where the Court applied the principles and rules of substantive maritime law.[6]

In the instant case the Stipulation of Facts discloses absence of notice to the libellant of the existence of the recess in the walkway but is silent on the question as to whether the shipowner had any knowledge of the situation.

That brings us to the determination of the question as to whether there was a duty on the part of the shipowner to inspect the dock area owned and controlled by a third party before granting shore leave to crew members and to give warning of any hazards. In our opinion no such duty exists.

An exhaustive research in analogous situations in nonmaritime law, where an employee must traverse the premises of a third person while going from his employer's property to a public highway, discloses that no such duty to inspect exists.

The general rule in master and servant cases goes even further. In Sharpley v. Wright, 1903, 205 Pa. 253 at page 258, 54 A. 896, at page 898, the Supreme Court of Pennsylvania said:

"It is well settled that an employer is not responsible for an injury sustained by his employe caused solely by unsafe premises which are owned and controlled by a third person, and where

---

5. There the seaman was injured in returning to the ship after having gone ashore to exchange a pair of gloves when he somehow fell from the dock with which he was not familiar while attempting to find the gangplank leading to the ship in the dark during a blackout. In dismissing his action the Court said: "Plaintiff claims there were no guards, lines, handropes or other means of protection on the dock. *But nowhere does it appear that this defendant owned, operated or controlled the dock.*" (Emphasis supplied.)

6. Cf. Wheeler v. West India S. S. Co., D.C.S.D.N.Y.1951, 103 F.Supp. 631, 634, where the Court made the following observation:

"Though the defendant was duty-bound to provide reasonably safe means of immediate access to the vessel, * * * shipowners have generally been held not liable for unsafe conditions in places beyond the gangway not under their control when the seaman is there for his own purposes and not in the performance of his duties. * * * The suggestion that the Supreme Court's decisions in the O'Donnell and Aguilar cases indicate an extension of the shipowner's liability so as to include such situations was clearly rejected in Lemon v. United States, D.C., 68 F.Supp. 793, 1946 A. M.C. 1640. The court accordingly is forced to conclude that, at least as yet, it can not be held that the shipowner's liability extends to such situations."

the employe's services are performed. The reason of the rule is that the employer does not own, use, or control the premises, and hence he cannot be made responsible for injuries sustained by reason of their unsafe condition."

In Israel v. Lit Brothers, 1915, 248 Pa. 463, 94 A. 136, the Pennsylvania Supreme Court cited with approval Sharpley v. Wright, supra. In doing so it held that there was no duty on the part of the master to inspect the premises of a third person on which he required the servant to work.

In Dravo Corp. v. Copeland, 1941, 190 Miss. 269, 199 So. 769 at page 770, it was held:

"Nor is a master liable for allowing or requiring a servant to be transported to premises of a third person, even though potentially dangerous, in the absence of actual knowledge by the master of an inherent condition which requires exposure by the servant to a danger so imminent and so reasonably unavoidable as to render resultant injury foreseeable as a reasonable probability." [7]

In view of these well-settled principles in nonmaritime cases what compelling reasons would require extending the law of maritime torts to include a duty of inspection over premises of another? Libellant cites a number of cases discussing the "father-child" and "ward-guardian" relationship between shipowner and seaman.[8] "It is against this background", says the libellant "that respondent's duty must be examined."

On that score it should be noted that when we say that seamen are the wards of admiralty, we do not thereby mean to throw wide open the gate to liability for any and all injuries which befall them. The paternal regard of the Courts and Congress for seamen has, for the most part, grown out of the peculiar conditions of their employment. These conditions, by their very nature rigorous and subjecting the seaman to unusually severe discipline for extended periods of time, are quite unlike the conditions which attend land labor, and have resulted in extraordinary remedies being made available to those who accept this calling.[9] In addition to maintenance and cure[10] is the doctrine of unseaworthiness,[11] and of equal importance is the abrogation of the common-law defenses of contributory negligence and assumption of risk.[12]

It is pertinent to distinguish at this point between the seaman's right to damages from the vessel for negligence and his right to maintenance and cure. Under the circumstances of the case at bar a seaman undoubtedly has available to him the latter remedy as was evidenced here by the settlement of the libellant's claim for maintenance and cure. But fault, i. e., the breach of a duty, is not an element in an action for maintenance and cure; it is the primary element of an action for damages. This was succinctly pointed out by

7. See also Ward Furniture Co. v. Ortner, 1926, 170 Ark. 581, 280 S.W. 371; Neely v. Goldberg, 1938, 195 Ark. 790, 114 S. W.2d 455; Carson v. Dierks Lumber & Coal Co., 1938, 196 Ark. 163, 117 S. W.2d 39; Walsh v. Turner Center Dairying Ass'n, 1916, 223 Mass. 386, 111 N. E. 889; Channon v. Sanford Co., 70 Conn. 573, 40 A. 462, 41 L.R.A. 200; American Bridge Co. v. Bainum, 3 Cir., 1906, 146 F. 367.

8. Robertson v. Baldwin, 1897, 165 U.S. 275, 287, 17 S.Ct. 326, 41 L.Ed. 715; Jones v. Waterman Steamship Corporation, 3 Cir., 1946, 155 F.2d 992, 1000; The Iroquois, 1904, 194 U.S. 240, 247, 24 S.Ct. 640, 48 L.Ed. 955; Murphy v. American Barge Line Co., 3 Cir., 1948, 169 F.2d 61, 64; Spellman v. American

Barge Line, 3 Cir., 1949, 176 F.2d 716, 721.

9. Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 728, 63 S.Ct. 930, 87 L.Ed. 1107.

10. Aguilar v. Standard Oil Co., supra; Farrell v. U. S., 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; Warren v. U. S., 1951, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503.

11. The Osceola, 1903, 189 U.S. 158, 23 S. Ct. 483, 47 L.Ed. 760.

12. The Arizona v. Anclich, 1936, 298 U.S. 110, 122, 123, 56 S.Ct. 707, 80 L.Ed. 1075; Mahnich v. Southern S.S. Co., 1944, 321 U.S. 96, 103, 104, 64 S.Ct. 455, 88 L.Ed. 561.

the Supreme Court of the United States in Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 736, 737, 63 S.Ct. 930, 937, 87 L.Ed. 1107, wherein it was stressed that breach of a duty is not an element in an action for maintenance and cure. In doing so the Court stated:

"Plaintiffs here were injured while traversing an area between their moored ships and the public streets by an appropriate route. * * * And it is said the shipowner should not be liable [for maintenance and cure] because he had no control over the premises. But it was the shipowner's business which required the use of those facilities. *And his obligation to care for the seaman's injuries is, as has been shown, in no sense a function of his negligence or fault. * * * Consequently the fact that the shipowner might not be liable to the seaman in damages for the dock owner's negligence, cf.* Todahl v. Sudden & Christenson, 9 Cir., 5 F.2d 462, *does not relieve him of his duty of maintenance and cure.*" (Emphasis supplied.)

The latter statement must be accorded the significance which it merits in view of the fact that in Todahl v. Sudden & Christenson, supra, previously discussed, it was held the shipowner was not liable for the dock owner's negligence.

▇ In conclusion we need only state that while subscribing to the considerations which have prevailed in the granting of special remedies and privileges to seamen as above discussed, we can see no justification or reason for obliterating by what could be nothing less than judicial legislation the applicable principles of the law of negligence as they have long been applied.

For the reasons stated the Order of the District Court will be affirmed.

BIGGS, Chief Judge (dissenting).

The suit at bar is an action in personam in admiralty based on the Jones Act, against the United States. See 46 U.S.C.A. § 741. It is based on the negligence of the shipowner rather than on unseaworthiness of the vessel, the issue of seaworthiness having been expressly abandoned by the plaintiff.

The shipowner did not have control of the dock but I cannot bring myself to the conclusion that the master of the "Moultrie" did not have a duty to the libellant, as a ward of the admiralty, to exercise reasonable diligence to make sure that the walkway, the customary way of egress from the vessel to the shore, was safe. If the master had exercised even slight care he would have been aware of the defect and could have warned Paul of the danger.

The pit into which Paul fell was within one hundred feet of the bow of the vessel, unguarded and unlighted. The accident occurred at night. Though Paul was going on shore leave he nonetheless was in the course of his employment. See Marceau v. Great Lakes Transit Corp., 2 Cir., 1945, 146 F.2d 416, certiorari denied 324 U.S. 872, 65 S.Ct. 1018, 89 L.Ed. 1426, and O'Donnell v. Great Lakes Dredge & Dock Co., 1943, 318 U.S. 36, 42–43, 63 S.Ct. 488, 87 L.Ed. 596. Cf. John Stewart & Son, Ltd. v. Longhurst, Ann.Cas.1917D, p. 196 (under a workmen's compensation statute), and Todahl v. Sudden & Christenson, 9 Cir., 1925, 5 F.2d 462. Since the ship's master did not fulfill what I think was his duty to the seaman I conclude that the United States should be liable to him for damages. See The Iroquois, 1904, 194 U.S. 240, 247, 24 S.Ct. 640, 48 L.Ed. 955; Jones v. Waterman S.S. Corp., 3 Cir., 1946, 155 F.2d 992, 1000; Murphy v. American Barge Line, 3 Cir., 1948, 169 F.2d 61, 64, certiorari denied 335 U.S. 859, 69 S.Ct. 133, 93 L.Ed. 406. Negligence within the purview of the Jones Act is to be construed liberally, bearing in mind that the obligation of a shipowner to his seamen is greater than that of the ordinary employer to his employees. See Koehler v. Presque-Isle Transportation Co., 2d Cir., 1944, 141 F.2d 490, 491.

There is no case in point albeit the principle that the duty of the ship to supply safe egress and ingress was recognized in this circuit in Monteiro v. Paco Tankers, Inc., D.C.E.D.Pa.1950, 93 F.Supp. 93, and affords the substantial basis of the decision in the Marceau case, supra, 146 F.2d 418–

419. The majority decision rests upon cases in which the plaintiff was a licensee or a business-invitee, and was not a seaman. In this connection see Patrick v. Atlas Knitting Co., 1914, 164 App.Div. 753, 149 N.Y. S. 845, which rules in favor of the plaintiff.

For the reasons stated I dissent.